EUGENE S. BALLIN AND OTHERS, EXECUTORS, &c., APPELLANTS, *v.* CHARLOTTE B. DILLAYE, IMPLEADED, &c., RESPONDENTS.

*Married Women — Separate Estate — Liability — Deficiency on Foreclosure — Contracts — Statutes of 1848 and 1849.*

The effect of the Married Women's Acts of 1848 and 1849 is not to remove the general disability of married women to bind themselves by their contracts, but to enable them to hold to their separate use, and to convey and devise their real and personal estate as if unmarried, substantially in the manner and to the extent previously authorized by the rules of equity.

The principle is, that under such acts the married woman may charge her separate estate for any debt she may contract on the credit of, or for the benefit of her separate estate.

PARKER, J.—The action in this case was brought to foreclose a mortgage executed by the Defendant, then and now a married woman, and her husband. By stipulation of the parties judgment of foreclosure and sale was entered, leaving the question of the liability of the Defendant upon her bond for the deficiency, if any there should be, to be determined after it was ascertained that such deficiency existed, and the amount of it.

A sale of the mortgaged premises was had, and a deficiency reported of $6,643.73, and interest from February 2, 1864.

The Defendant acquired her title to the premises by purchase upon a previous mortgage-sale in favor of the Merchants' Bank, on the 14th day of November, 1860. At the time of such sale the Plaintiffs held a mortgage, junior to the one on which the premises were sold, upon the same premises, for about $8,000; and on that day the parties entered into the following agreement, viz.:

"I, Charlotte B. Dillaye, by and with the assent of Stephen D. Dillaye, my husband, testified to by his writing herein, do agree with E. S. Ballin and others, executors of Martin Cone, as follows: -

"1. I recognize the bond and mortgage held by them as valid.

"2. I agree to pay or secure the same.

"3. As the executors would bid on the property to the extent

of said mortgage, and it is my wish they should not do so, I agree to secure said mortgage by a new mortgage, to be executed and delivered simultaneously with the filing of the affidavits of sale under the mortgages held by the Merchants' Bank of Syracuse.

" There are certain thirty-two lots not to be embraced in the new mortgage. The property is the Rust farm, and is described in the mortgage to the executors. The property is mortgaged also to the further amount of some $7,000, advanced this day by the executors to extricate the title from embarrassment."

In pursuance of this agreement the bond and mortgage in question in this action were, on the 14th of November, 1860, executed by the Defendant and her husband.

After the report of sale in this action, showing the deficiency, the question of the liability of Mrs. Dillaye for the deficiency came up for trial at Special Term, upon which trial the Plaintiffs put in evidence the judgment-roll in foreclosure; also the said agreement, the bond accompanying the mortgage foreclosed, the report of the sale and deficiency, and the proceedings in foreclosure of the Merchants' Bank mortgages, and offered to prove that the Defendant, Charlotte B. Dillaye, at the time of giving said bond and mortgage, was possessed of a separate estate from her husband of $10,000; to which the counsel for said Defendant objected, and the Court sustained the objection; to which ruling and decision the Plaintiffs' counsel excepted.

The Plaintiffs then offered to show that Mrs. Dillaye sold several lots, which she purchased under the Merchants' Bank foreclosure, and which she had previously contracted away to other parties, the same being left out of the mortgage in question, under the stipulation. To this the Defendant's counsel objected. The objection was sustained, and the Plaintiffs' counsel excepted.

The Court found and decided as follows :

" This action coming on for trial upon the question reserved as to the personal liability of the above-named Charlotte B. Dillaye to pay the deficiency after the sale of the mortgaged premises; and after hearing the proofs and allegations of the respective parties, and

after hearing counsel, I have come to the conclusion that no judgment can legally be entered up against her for such deficiency. This conclusion is based upon the stipulation of the parties, and the judgment-roll in foreclosure, as to the facts. As a matter of law I hold that a married woman is not personally bound by her agreement to pay the purchase-price of real estate which she purchases for her separate property, although she has a separate estate."

Upon this decision judgment was entered for the Defendant, which, upon appeal to the General Term, was affirmed, and from the judgment of affirmance the Plaintiffs appeal to this Court.

Although the terms of the conclusion of law stated by the Court seem to look only to the personal liability of the Defendant, and not to that of her separate estate, they must be considered as excluding her estate from the liability also; for the case calls for a decision of that question, and that was regarded as the question by the General Term. Besides, if the case shows her estate liable, the decision, in either view, is equally erroneous. The acts of 1848 and 1849, for the more effectual protection of the property of married women, did not remove the general disability of married women to bind themselves by their contracts; but the power conferred by those statutes to hold to their separate use, and to convey and devise, all their real and personal estate, as if unmarried, carried with it the power to charge such estate substantially in the manner and to the extent previously authorized by the rules of equity in respect to separate estates (Yale *v.* Dederer, 18 N. Y. R. 265 ; S. C. 22 N. Y. R. 450).

The rule, as recognized and established by the Courts of Equity in this State, is stated by the Chancellor, in Gardner *v.* Gardner (7 Paige, 112), as follows : " The wife may have a separate estate of her own, which estate is chargeable in equity for any debt she may contract *on the credit of*, or *for the use of* such estate." Again, in the North American Coal Company *v.* Dyett (7 Paige, 9), the same learned Chancellor says : " The feme covert is, as to her separate estate, considered as a feme sole, *and* may in person, or by her legally authorized agent, bind such

separate estate with the payment of debts contracted *for the benefit of that estate*, or for her own benefit upon its credit." In Curtis *v.* Engel (2 Sandf. Ch. R. 287), the complainants filed their bill as creditors of Mrs. Engel, the Defendant, to charge the indebtedness upon her separate estate. . The learned Assistant Vice-Chancellor Sandford said : " In order to maintain their suit they must show that the debt was contracted either *for the benefit of her separate estate*, or for her own benefit, upon the credit of the separate estate. Whatever may have been the expressions of Judges on the subject, this is the utmost extent to which the doctrine has been carried by the decisions in this State."

This rule is fully recognized and asserted in Yale *v.* Dederer (supra), and in White *v.* McNett (33 N. Y. R. 371).

That the Defendant, in the case at bar, had a separate estate, we may assume, although not in terms found by the Court, both because the stipulation and judgment-roll referred to in the Judge's decision show it, and because of the exclusion of the Plaintiffs' distinct offer to prove it.

Whether the obligation which the Defendant took upon herself, when she executed the bond and mortgage to the Plaintiffs, was, in view of the undisputed facts of the case, for the benefit of her separate estate, in such sense as to make such estate liable, depends upon a legal construction, and is therefore open for consideration in our review of the case.

That the arrangement between these parties, by which the Defendant was, by the aid of the Plaintiffs, enabled to purchase the mortgaged premises, with the additional thirty-two lots, was a transaction with reference to her separate estate, is but a self-evident proposition, for the premises so purchased were either the whole or part and parcel of her separate estate. The bond and mortgage in question were given as a part of that transaction, to enable her to acquire that separate estate ; and with reference to that property, at least, it is impossible to deny that the obligation was entered into by her for the benefit of such separate estate.

The estate thus obtained was not the mortgaged premises exclusively, but thirty-two lots in addition, and these, or their pro-

ceeds, are in themselves a separate estate, *benefited* by the under-taking of the Defendant to pay the money secured by the bond. I do not understand how it can be said that a debt contracted upon the purchase of property which the purchaser takes into possession and enjoys is not a debt contracted for the benefit of the purchaser's estate (3 Allen, 541; 6 id. 300; 7 id. 504; 8 id. 387).

In White *v.* McNett (supra), where the action was against a married woman, with her husband, upon a guaranty executed by her and her husband, contained in the transfer of a mortgage belonging to her, that such mortgage was collectable, it was assumed that, if she had received the proceeds of the sale, she would have been liable.

Moreover, in this case $7,000 of the money secured by the bond and mortgage was advanced by the Plaintiffs to extricate the title " of the property purchased by her from embarrassment." It can scarcely be denied that this money went to benefit her estate, and the debt contracted by her for it was for the benefit of her separate estate.

I have no doubt, therefore, that in the case at bar the obligation which the Defendant took upon herself, by the execution of the bond, was for the benefit of her separate estate, which is therefore chargeable in equity with the payment of the deficiency in question. In such case the liability attaches, not as a specific lien on any particular portion of her estate, but upon the whole of it.

Her separate estate, as a whole, becomes liable for any indebtedness contracted by her for its benefit to any extent, as it was held in North American Coal Company *v.* Dyett (supra, and 20 Wend. 570), where the indebtedness arose for coal furnished to a factory held in trust for Mrs. Dyett, that the rents and profits of a house in New York, a portion of her trust estate, were held liable to be reached for the indebtedness.

(See also 3 Allen, 541; 6 id. 300; 7 id. 504; 8 id. 387.)

The Defendant's counsel insists, however, that the fact that she had a separate estate cannot be considered, because not set up in the com_plaint, and the Court was and is bound to consider the

case upon the issue found by the pleadings; and for the reason, that the stipulation by which the Plaintiffs were allowed to take judgment for foreclosure and sale, reserving the question of Defendant's liability for the deficiency, requires such restriction. The language of the stipulation, so far as this question is concerned, after stating that this Defendant has appeared and answered, " claiming by her answer that by reason of her coverture she is not legally liable for any deficiency in the sale," and after allowing the Plaintiffs to enter a decree for the sale of the premises, and to take such steps as may be necessary to enforce said claim according to law, proceeds as follows : " And that in case any deficiency arise upon the sale, under the decree of sale to be entered in such case, no judgment shall be entered against said Charlotte B. Dillaye, until such time as the legal question whether she is liable to a judgment against her for such deficiency shall be tried and decided, on the issue so raised by her answer as aforesaid, by this Court."

I do not think this stipulation, by any fair construction of it, confines the Court to any narrower rule or mode of trial than if the same question had been tried in its natural order, without any stipulation. The whole scope of the stipulation is to allow the foreclosure and sale, to which there was no defence, to take place, so that the fact whether any deficiency would occur might be learned before entering upon a trial which might, or might not, as that fact should turn out, be entirely nugatory.

The language, " shall be tried and decided on the issue so raised by her answer as aforesaid," is but the pointing out of the portion of the case which is reserved for trial in the Court that it shall become pertinent to try it in. Such is the natural and obvious construction of the language used, and no inference arises that the trial of that issue is not to be conducted precisely as if the trial were had before the decree of foreclosure and sale. Notwithstanding the stipulation, it was competent to the Court, upon the trial, to allow an amendment of the pleadings, and, inasmuch as the fact that Defendant had a separate estate was relevant and material, and the Plaintiffs made no objection on the ground

that it was not set up in the complaint, the Defendant must now meet the case as if that fact were proved.

The same is true in regard to the fact offered to be proved, that the thirty-two lots were left out of the mortgage.

It is proper, therefore, to consider the case upon the assumption that the Defendant had a separate estate. Being of the opinion, for the reasons above stated, that such estate is liable for the deficiency in question, I think the judgment appealed from is erroneous and should be reversed, and a new trial granted, costs to abide the suit.

All reverse, except DAVIES, Ch.J.

Reversed.

JOEL TIFFANY,
State Reporter.