By the Court.—Sanford, J.
Where the grantor of an equity of redemption in mortgaged premises is not personally liable to the holder of the mortgage for the payment thereof, and has no interest in such payment, legal or equitable, except in so far as the mortgage may be a charge upon the mortgaged lands, his grantee thereof incurs no personal liability to the holder of the mortgage, by reason of a clause con *97 tained in the deed, whereby the payment of such mortgage, is, in terms, assumed and agreed to be paid by him as part of the consideration of such conveyance (King v. Whatly, 10 Paige, 465 ; Vrooman v. Turner, decided by the court of appeals, April 10, 1877, but not yet reported, vide 4 N. Y. Weekly Dig. 504; N. Y. Daily Register, June 2, 1877). The case last cited carefully and clearly distinguishes the principle upon which exemption from liability is accorded to the grantee of mortgaged premises, under the circumstances above stated, from the rule adopted in that class of cases of which Lawrence v. Fox (20 N. Y. 268) is an example, and in which it has been held that' an action sometimes accrues in favor of one, for whose benefit a promise has been made to another, against the promisor, upon the breach of such promise. It holds that, in order to give the third party, who may derive benefit from the performance of the promise, a right of action against the promisor, there must be in him a legal right to adopt and claim the promise as made for his benefit, founded upon some obligation or duty on the part of the promisee toward himself.
Where no such obligation or duty exists, as, for instance, when a grantor of mortgaged premises is not personally bound for the payment of the mortgage debt, the rule adopted in that class of cases cannot be invoked. The principle upon which a grantee, who assumes payment of a mortgaged debt for which his grantor is personally liable, may be directly pursued by the mortgage creditor, or held for any deficiency in the proceeds of a sale of the mortgaged premises, is involved in, and grows- out of the equitable doctrine of subrogation, whereby a creditor is entitled to the benefit of any security held by a surety for the payment of the debt due him. As between the grantor, liable for the payment of a mortgage, and his grantee, who assumes and agrees with him to pay it, the latter *98 becomes, in equity, the principal debtor, the former a surety for the payment of the debt. The creditor, under the rule of subrogation, may resort to the rights and remedies available to the surety, who is charged with an obligation or duty towards himself, and may enforce them in the same manner, and to the same extent, as the surety himself may do. But, if the grantor be not chargeable with any liability tó the holder of the mortgage, no relation of suretyship exists as between him and his grantee, and the rule of subrogation is, therefore, wholly inapplicable to any promise or undertaking made by the grantee in his favor.
It would seem to follow from these premises, that unless Kate M. Cormac was personally liable to the plaintiff for the payment of the bond and mortgage in suit, or for a deficiency upon the sale of the mortgaged premises, no right of action accrued to him, or exists in his favor as against her grantees, the present defendants. In other words, unless the plaintiff’s claim can be enforced against her, neither can it be enforced against those to whom she may have recourse by way of indemnity, in case of its enforcement against herself. He can only be entitled to subrogation to her rights and remedies, by reason of her obligation or liability to himself.
We have, therefore, to inquire and determine, whether, under and by virtue of the assumption clause contained in the deed to herself, Kate M. Cormac, the defendant’s grantor, became personally liable to the plaintiff for the payment of his mortgage, or so charged her separate estate with liability for its payment, as to be legally or equitably interested in having it paid, after she ceased to have any interest in the lands upon which it was a specific lien. If she was under no obligation to the plaintiff in respect to it, and had no interest in securing its payment, except to the extent it charged those lands, the plaintiff acquired no *99 right, and can enforce no remedy against the defendants, under and by virtue of their covenant of assumption contained in the deed from her. It affirmatively appears that she was a married woman at the date of the conveyance to herself. Her coverture precluded her from contracting, and her disability rendered her contracts void, except in so far as the provisions of the married women’s acts imparted validity to them. The onus of establishing the validity of a contract made by a feme covert is upon Mm who asserts it. It was earnestly insisted, upon the argument, that the burden of proof was upon the defendants, to show that their grantor was not liable. Such is not the correct view to take of the relations subsisting between the parties. The plaintiff claims that the defendants are liable to him. To establish such liability, he must show that the defendants’ grantor, with whom they contracted, as he alleges for his benefit, was under some obligation to him, from which it can be inferred that the contract with her was intended to have that effect. The plaintiff was therefore under the necessity of proving against them, the same state of facts which would have been requisite, if he had sought to establish the liability of their grantor against herself. To establish her liability, it would have been essential that he should prove, not only a contract, but a contract within the statutory exceptions. As no intention to charge her separate estate was expressed in the instrument or contract by which her liability is supposed to have been created, it should have been made to appear by proof, on the part of the plaintiff, either that such liability was assumed in the prosecution of a trade or business carried on by the wife, or that it had relation to, and was incurred for the benefit of the wife’s separate estate (Manhattan B. & M. Co. v. Thompson, 58 N. Y 80). No evidence was adduced tending to establish either of these conditions. As was said in Nash v. *100 Mitchell (MS. opinion of court of appeals, reversing 8 Hun, 471, vide Alb. L. J. December 15, 1877), “The law does not authorize the presumption, and courts cannot assume without evidence, that a simple contract without anything on its face to indicate the fact, was made for the benefit of the estate of a married woman.” The same case is full authority for the proposition, that the burthen of proof is upon him who asserts, and not upon him who impugns the validity of a contract made by one under the disabilities of coverture. The proofs would not, in my opinion, have warranted a finding that Mrs. Cormac ever became personally liable to the plaintiff for the payment of his mortgage, or ever charged the payment thereof upon her separate estate.
The costs of the issue tendered by the answer were in the discretion of the court below. I am of the opinion that such discretion was wisely and properly exercised.
'“The judgment, so far as appealed from, must be affirmed, with costs against the appellants.
Curtis, Ch. J., concurred.*

 The reporters, deeming it advisable that the opinion of the court of appeals reversing the judgment in above case should be at once published, have obtained the kind consent of Mr. Sickles, reporter of the said court, thereto.
Andrews, J.—This court, in Vrooman v. Turner (69 N. Y. 280), affirmed the doctrine of King v. Whitely (10 Paige, 465), that where a grantor, of an equity of redemption in mortgaged premises is not personally liable to pay the mortgage debt, and has no legal or equitable interest in such payment, except so far as the mortgage may be a charge upon the lands mortgaged, his grantee thereof incurs no liability to the holder of the mortgage by reason of a covenant on his part, contained in the deed, to assume and pay the mortgage. The grounds of this doctrine are fully stated in the opinion in the cases cited, and need not be here adverted to. The defendants claim the benefit of the rule, and they were by the judgment of the court below exonerated from liability for the deficiency arising on the fore *101 closure sale in this action on the ground that Mrs. Cormac, their grantor, was not personally bound or liable to pay the plaintiff’s mortgage. The mortgage was executed by one Simon to the plaintiff, in 1872, to secure the payment of his bond for $20,000. In 1873, Simon, the owner of the equity of redemption in the mortgaged premises, conveyed them by deed to Kate M. Cormac, a married woman, for the consideration, as expressed in the deed, of §31,000. subject to the mortgage, which the grantee, by the terms of the deed, assumed and agreed to pay as a part of the consideration of the conveyance.
In 1874, Mrs. Cormac, together with her husband, deeded the premises to the defendants, subject to the mortgage, which they, in turn, assumed and agreed to pay. It was not shown upon the trial that Mrs. Cormac when she purchased the lands had any separate estate, or that she was engaged in any trade or business on her own account or otherwise. The purchase comprised four city lots, but it does not appear for what purpose they were brought, whether for use or resale. The finding of the court that Mrs. Cormac was not personally liable to pay the plaintiff’s mortgage notwithstanding her express agreement contained in the conveyance from Simon was put upon the ground that a married woman has no general capacity, under the acts of 1848, 1849, 1800 and 1862, to bind herself by a contract to pay the purchase price of land bought by and conveyed to her, and that her common law disability attaches to and makes her contract void, unless it appears that the purchase was made and the liability incurred in the prosecution of a trade or business carried on by her on her separate account, and that to charge her estate in equity for the debt, there must have been an antecedent separate estate capable of being charged, and the intention to charge it expressed in the contract, or the consideration must be one going to the direct benefit of such estate.
The question presented is one of considerable importance, and not free from difficulty. The case of Yale v. Dederer (18 N. Y. 265; 22 Id. 450), arose under the acts of 1848 and 1849, and it was determined in that case that the statutes then under consideration did not remove the common law disability of a married woman to contract debts or bind herself by a personal obligation, and that her engagements in any case could only be enforced by way of equitable charge upon her separate estate, and that such charge could only be created by an intention declared in the contract which is the foundation of the charge, or when the contract was for the direct benefit of her estate, and it was held that her estate was not charged by the execution of a promissory note which she had signed in the ordinary form of such a *102 contract as surety for her husband. The construction put upon the acts of 1848 and 1849 in Yale v. Dederer has been followed in other cases, and the decision in that case is controlling as to the construction of these statutes, and in respect to cases coming within the same principle.
It is difficult to hold, in view of the decision in Yale v. Dederer, that under the acts of 1848 and 1849 the contract of a married woman to pay for land purchased by her is valid, either in law or equity, or enforceable against her estate, when she receives no other benefit from the transaction than the benefit implied from the acquisition of the title to the land purchased, at least when the land purchased constitutes her entire estate. This view of the statutes does not, however, involve the injustice of allowing a married woman to obtain the title to land upon- a promise to pay the purchase price, and then to hold it free from any claim or lien for the purchase money. Upon the well settled doctrine of equity, if her bond or other security for the payment of the consideration is void, the land would be subjected, upon principles quite independent of any doctrine appertaining to the separate estates of married women, to a lien in favor of the vendor for the unpaid purchase money. The act of 1848, as amended in 1849, so far as it authorized a married woman to take by gift or grant from any person other than her husband, real or personal property, was not an enabling statute. This capacity she had at common law (Derby v. Callaghan, 16 N. Y. 71; Knapp v. Smith, 27 Id. 278). The new capacity given to a married woman by that act was to hold the estate or property acquired by her in any of the modes designated therein as her separate property without the creation of a trust, or the intervention of trustees, free from the control or power of disposition of the husband, with the right to convey and devise it as if she were a feme sole.
In Huyler v. Atwood (26 N. J. Eq. 504; S. C., 28 Id. 275), a case almost identical in its facts with this, the same question arose as to the liability of Jlie grantees of a married woman, who in the conveyance to them had assumed the payment of a mortgage on the land, which she had likewise assumed in the conveyance from her grantor, to pay a deficiency arising on the foreclosure of the mortgage.
Section 3 of the New Jersey statute of .1852, relating to married women, is in nearly the same words as the same section of our statute of 1848, and the court affirmed the liability of the defendants for the deficiency, upon the ground that the covenant of their grantor to assume and pay the mortgage in the conveyances to her was valid, notwithstanding her coverture, and the conclusion as to the validity of her covenant was reached upon the ground that the legislature, by *103 giving to married women the capacity to acquire real estate by grant, impliedly authorized them to enter into a contract of purchase, and to bind themselves to pay the purchase money. The limited construction put upon our statute in Yale v. Dederer, would not probably justify us in adopting, in its full extent, the view of the New Jersey court, but this court, in Ballin v. Dillaye (37 N. Y. 35), which arose under the acts of 1848 and 1849 and 1860, went very far towards holding a married woman liable on her bond, given on her purchase of land, for the payment of the purchase money. In that case, the question was whether the defendant, Mrs. Dillaye, a married woman, was liable on her bond for a deficiency upon a foreclosure of a mortgage executed by her to the plaintiffs. She obtained title to the premises by purchase at a foreclosure sale of a mortgage, held by a bank. The plaintiffs, at the time, held a junior mortgage on the same premises, and intended upon the.sale to bid to the extent of their mortgage. Mrs. Dillaye wished to prevent their ^bidding. A written agreement was accordingly executed between her and the plaintiffs, by which, in substance, the plaintiffs agreed to advance §7,000 to clear the title, and not to bid at the sale, and she agreed to recognize their mortgage as valid, and to give them, on her purchasing the premises, her bond and mortgage on part of the premises, to secure the payment of their mortgage debt, and the §7,000 advanced.
Pursuant to the agreement the plaintiffs advanced the money and refrained from bidding, and the defendant bought the premises and executed to them a bond and mortgage covering the advance and the amount of their original mortgage.
On the trial of the question of Mrs. Dillaye’s liability for the deficiency, the plaintiffs offered to prove that at the time of the transaction she had a separate estate. There was no offer to prove, nor did it appear, that Mrs. Dillaye had any interest in the mortgaged premises prior to her purchase on the foreclosure of the bank mortgage, or that her antecedent separate estate was pledged for the mortgage debt or had any relation to the mortgaged premises.
The special term rejected the proof offered, and held that the defendant was not liable for the deficiency, and the decision of the special term was affirmed by the general term. This court reversed the judgment and directed a new trial.
It is a little difficult to ascertain the precise grounds upon which the decision in this court proceeds. The court, in reference to the fact that Mrs. Dillaye had a separate estate, say that it was relevant and material, and in view of the offer on the trial to prove the fact, it is assumed in the consideration of the case. But I do not understand that her liability is put upon the ground that she had a separate *104 estate at the time of the purchase—certainly it was not put upon this ground alone. It is not perceived how Mrs. Dillaye’s liability at law or in equity for the deficiency could be affected by the fact that she had a separate estate at the time of the transaction, unless it was connected by contract or otherwise with the property purchased. But the court seem to hold that as she by the purchase on the foreclosure of the bank mortgage acquired not only the property included in the plaintiff’s mortgage, but other lots in addition, the obligation entered into by her was for the benefit of her estate, and that her whole estate was therefore chargeable with the deficiency.
It is claimed on the part of the plaintiff that the case of Ballin v. Dillaye decides in his favor the question now presented. But without considering whether the circumstances under which the bond in that case was given distinguish it in principle from this, I am of opinion that the covenant of. the defendant’s grantor to assume and pay the Simon mortgage, was binding and valid on the ground that under the acts of 1860 and 1863, in connection with the previous, a married woman may purchase property on credit and bind herself by a contract to pay the purchase money, and that it is not a material circumstance in respect to her liability, whether she had any antecedent separate estate, or whether the contract on her part was a prudent, wise and advantageous one.
The act of 1860 greatly enlarged the civil capacity of a feme covert beyond what was conferred by the previous legislation. By section 3 she is empowered to bargain, sell, assign and transfer her separate property, and carry on any trade or business and perform any labor or services on her solo and separate account. Section 3 authorizes a married woman possessed of real estate as her separate property, to bargain, sell and convey the same, or to enter into any contract in reference thereto, with the assent in writing of her husband, or by authority of the court, obtained as provided in the section. Section 7 provides that she may sue and be sued in all matters having relation to her separate property, or in relation to property which might thereafter come to her by descent, devise, bequest or gift of any person, except her husband, in the same manner as if she were sole. Section 8 declares that the husband shall not be bound by any bargain or contract of the wife “in respect to her sole or seperate property, or any ¡n-operty which may hereafter come to her by descent, devise, bequest, or the gift of any person except her husband,” or by any bargain or contract entered into by her in or about the carrying on of any trade or business under any statute of the State or render him or his property in any way liable therefor.
The authority given to a married woman by this statute to carry *105 on any trade or business on her own account, and to have and control her own earnings, whether living with her husband or living separate from him, worked a radical change in the pre-existing law, and it has been held by this court in several cases that as incident to her authority under this statute to carry on a trade or business a married woman may enter into any contract in respect thereto. She may purchase real or personal property on credit for the purposes of the trade or business into which she is about to enter, and bind herself by contract of payment, and also by her contracts made in the course of the business in which she engages (Bodine v. Kelleen, 53 N. Y. 93; Frecking v. Pollard, Id. 423). In the case last cited it was said, “ The power to carry on a separate trade or business includes the power to borrow money and to purchase upon credit implements, fixtures and real or personal estate necessary or convenient for the purpose of commencing it, as well as the power to contract debts in its prosecution after it has been established.”
The limitation upon the power of a married woman to deal with her real estate contained in section 3 of the act of 1860,—which made the assent of her husband, or the order of the court, necessary to the validity of her conveyance of her lands, or her contracts in respect thereto,—was removed by the amendment of 1862, and a clause was added to the section, expressly authorizing her to enter into any of the usual covenants for title, in her contracts in relation to, or her conveyances of, her real property, which covenants the section declares shall be obligatory to bind her separate property.
It will be observed that these statutes confer upon a married woman the broadest and most comprehensive powers over her separate real and personal property. Her power of disposition is absolute and unqualified; she may sell or give it away. She may enter into any contract in respect to her separate real property “ with the same effect and in all respects as if she were unmarried,” and this court has held that as incident to her separate ownership, she is liable for torts committed in its management and for the fraud of her agynt in dealing with third persons in respect to it (Rowe v. Smith, 45 N. Y. 130; Baum v. Mullen, 47 Id. 577). She may engage in business and incur the most dangerous and even ruinous liabilities in its prosecution, and they will be enforced against her to the same extent as if she were unmarried. She is no longer regarded as under the tutelage of the court, but the new legislation assumes that she is capable of managing her own interests.
But it is insisted that she may not bind herself by a contract for the purpose of land, if she has no antecedent estate to be benefited, or if the purchase is not made for the purposes of a trade or business. *106 The policy of such special limitation, in view of the general scope of our statutes and the conceded power of married women to charge and dispose of their property, and incur liabilities in its management, is not apparent.
In Stewart v. Jenkins (6 Allen, 300), the supreme court of Massachusetts, under a statute of that State which provides, “ that a married woman may bargain, sell, and convey her separate real and personal property, enter into any contract in reference to the same, carry on any trade and business, and perform any labor and services on her sole and separate account, and sue and be sued in all matters having relation to her separate property, &c., as if she were sole, ” held that a married woman was bound by a note given as the consideration in part of a conveyance of real estate, on the ground that it was a contract in reference to her separate estate within the statute, and the court rejected, as too narrow, the construction insisted upon by the defendant, that the power given to a married woman by the statute to enter into a contract in reference to her separate estate was limited to the estate owned by her when the contract was made.
The section of the Massachusetts statute considered in Stewart ®. Jenkins is very nearly like the third section of our statute of 1860, as amended in 1862. But the intention of the legislature to confer upon a married woman the general capacity to enter into a valid executory contract to pay for property purchased by her is indicated by sections 7 and 8 of the act of 1860, as amended in 1862. Section 7 of the act of 1860 was amended by the act of 1862, by inserting the word “ purchase ” in the first clause of the section, so that it should read: “Any married woman may, while married, sue and be sued in all matters having relation to her sole and separate property, or which may come to her by descent, devise, bequest, purchase, &c.” And section 8 was amended by inserting the same word in that section so as to embrace in the exemption of the husband, exemption from liability on the contracts of the wife made in respect to property coming to her by purchase.
These amendments indicate that the legislature had in view the acquisition by a married woman of the title to property by purchase and the clear implication from the provision in section 8, exempting the husband from liability upon the wife’s contracts or bargains in respect to property purchased by her, is that she may bind herself personally by such contracts, and a contract to pay the consideration of land conveyed to her is, I think, a contract in respect to property coming to her by purchase, within the meaning of the statute.
The conclusion is that under the statutes as they now exist a married woman, as incident to her right to acquire real and personal *107 property by purchase and hold it to her sole and separate use, may purchase property upon credit, and bind herself by an executory contract to pay the consideration money, and that her bond, note or other engagement given and entered into to secure the payment of the purchase price of property acquired and held for her separate use may be enforced against her in the same manner and to the same extent as if she were a feme sole, and that her liability does not depend upon the proof or existence of special circumstances, but is governed by the ordinary rules which determine the liability of persons sui juris upon their contracts.
The judgment should be reversed and a new trial ordered.
All concur. Miller and Earle, JJ., absent at argument.