## MESSER v. SMYTH.

A note of a married woman, given by her for the price of land bought by her at the time of the conveyance, is a contract made by a "married woman holding property in her own right, * * * in respect to such property," within the meaning of Gen. Sts., c. 164, s. 13; and her mortgage of the same land, made at the same time, to secure the note, is valid.

WRIT OF ENTRY, on a mortgage of a farm, made by the defendant to the plaintiff. The defendant bought the farm of the plaintiff. At the time of the purchase the defendant was, and ever since has been, a married woman. When the plaintiff conveyed the farm to her, July 30, 1875, she gave him her note for $4,250, part of the price, and the mortgage to secure the note. The court reserved the question, whether the action can be maintained.

*Hatch*, for the plaintiff.

*S. C. Eastman*, for the defendant.

DOE, C. J. Under Gen. Sts., c. 164, s. 1, the farm became the separate property of the defendant when the title passed to her from the plaintiff. And if her note for part of the price, given when the title passed, was a contract made by her " in respect to" her separate property, it was valid, and this action can be maintained. Gen. Sts., c. 164, s. 13.

In *Bailey* v. *Pearson*, 29 N. H. 77, the wife, having separate property, signed a note with her son, apparently as his surety. The note did not appear to have been given in respect to her property. In *Shannon* v. *Canney*, 44 N. H. 592, it did not appear that the wife had any separate property. Her note was given for physician's services. In *Carleton* v. *Haywood*, 49 N. H. 314, the wife had separate property. The suit was assumpsit, charging her as bailee of the plain-

tiff's money. Her contract was not in respect to her property. In *Whipple* v. *Giles*, 55 N. H. 139, it did not appear that the defendant ever had any property. Her contract was her retainment of an attorney for obtaining a divorce. In *Eaton* v. *George*, 40 N. H. 258, 262, 263, 264, S. C., 42 N. H. 375, and *Kennard* v. *George*, 44 N. H. 440, it was held that the land mortgaged by Mrs. George was not her separate property.

In *Ames* v. *Foster*, 42 N. H. 381, it was probably understood that the money hired by the defendant was not conveyed to her " to be held by her, without the intervention of a trustee, to her sole and separate use, free from the interference or control of her husband," was not her separate property under the act of 1846, but was property which her husband could lawfully appropriate, and in respect to which she was not empowered by the statute to make contracts. *Eaton* v. *George*, 40 N. H. 258, 262, 263 ; *Brown* v. *Glines*, 42 N. H. 160, 161 ; *Leach* v. *Noyes*, 45 N. H. 364 ; *Hall* v. *Young*, 37 N. H. 134, 146 ; *Atherton* v. *McQuesten*, 46 N. H. 205, 210 ; *Caswell* v. *Hill*, 47 N. H. 407, 410 ; *Sanborn* v. *Batchelder*, 51 N. H. 426. The point determined in *Ames* v. *Foster* was, that the hiring of the money by the wife before her purchase of separate property, and for the purpose of buying such property, was not authorized by the act of 1846. The hiring of the money did not relate to separate realty owned by her at the time of the hiring. The statute was not construed to make her ownership of separate property, before the time of her making a contract in respect to it, essential to the validity of the contract. The language of the decision is, " the power of the married woman to bind herself by her contract, under this statute, * * * exists only in cases where she is, at the time of making the same, entitled to hold separate property to her own use, and when the contract relates to that property." This was understood to mean that the separate property, in respect to which her contract is made, must be hers at the time the contract is made. *Batchelder* v. *Sargent*, 47 N. H. 262, 264. " At the time" is not before the time.

In *Hammond* v. *Corbett*, 51 N. H. 311, a wife was held liable for firewood bought by her on the credit of her separate property, under the act of 1860 ; but in that case, and in *Blake* v. *Hall*, 57 N. H. 373, *Muzzey* v. *Reardon*, 57 N. H. 378, and *Read* v. *Hall*, 57 N. H. 482, it seems to have been inadvertently taken for granted, either that the property bought by the wife was not her separate property, or that she could not make a valid contract in respect to her separate property unless it was hers before she made the contract. A contract by which a married woman acquires separate property, is a contract made by her in respect to her separate property. *Stewart* v. *Jenkins*, 6 Allen 300 ; *Estabrook* v. *Earle*, 97 Mass. 302, 303 ; *Labaree* v. *Colby*, 99 Mass. 559, 560 ; *Gordon* v. *Dix*, 106 Mass. 305, 306 ; *Faucett* v. *Currier*, 109 Mass. 79, 81 ; *Heburn* v. *Warner*, 112 Mass. 271, 273 ; *Glass* v. *Warwick*, 40 Pa. 140 ; *Pemberton* v. *Johnson*, 46 Mo. 342 ; *Ballin* v. *Dillaye*, 37 N. Y. 35, 39 ; *Huyler* v. *Atwood*, 26 N. J. Eq.

504; S. C., 28 N. J. Eq. 275; *Sykes* v. *Chadwick*, 18 Wall. 141, 145, 147, 148; 2 Perry on Trusts, *s.* 686.

The defence of legal incapacity in this case cannot stand on the literal meaning of words, or nice and critical construction. The note for $4,250, part of the price of the farm, was a promise made by the defendant upon a good consideration. It was made in respect to the farm: her promise to pay for the farm related as much to the farm as would her promise to pay for neat stock bought for use on the farm. *Batchelder* v. *Sargent*, 47 N. H. 262. The farm was her separate property. And the question is, not whether the farm was hers before or after the note was given, but whether it was hers at the time the note was given. When the title passed to her by the delivery of the deed, and not till then, there was a consideration for the note. The note was a contract made by her when the deed and note were delivered. The deed and note were mutual and simultaneous parts of a contract that was made at a point of time having chronological position but no duration. The note was a contract made by the defendant either before? the farm was hers, or when the farm was hers. It was not made before the farm was hers.

A method of construction less strict, less technical, and more consistent with the liberal intention of the legislature and the emancipating character of the statute, leads to the same conclusion. The act of 1846 (*c.* 327, *ss.* 1, 2, 4) provides, that, under an antenuptial contract, a wife may hold her antenuptial property to her sole and separate use, free from the control and interference of her husband; that any devise, conveyance, or bequest of property may be made to any married woman, to be held by her without the intervention of a trustee, to her sole and separate use, free from the interference or control of her husband; and that married women, " in the cases aforesaid," shall be liable to be sued upon any contract by them made " in respect to such property," and upon any contract by them made before marriage, in the same manner and with the same effect as if they were unmarried. The act goes beyond the mere dispensing with a trustee, and turning an equitable estate into a legal one, beyond the chancery doctrine of separate property (*Crane* v. *Thurston*, 4 N. H. 418, 423; 2 Story Eq., *ss.* 1378–1396; 1 Bishop Law of Married Women, *ss.* 790–879; 2 *id.*, *ss.* 162–173), and beyond the protection of the wife. It makes her liable at law personally, as if unmarried, for debts contracted by her in respect to such property. *Batchelder* v. *Sargent*, 47 N. H. 262, 266. Certain disabilities of married women are abolished by the termination of the common-law interruption of certain antenuptial powers and liabilities. So far as the question in this case is concerned, there is no distinction between their property acquired before marriage and their property acquired after marriage, and no distinction between their property, their separate property, and property held by them in their own right; and the statute is a continuation of antenuptial rights and obligations, and not a creation of new ones. Gen. St., *c.* 164, *ss.* 1, 13. The legislation that put an

end to the common-law suspension of their antenuptial right of making contracts in respect to their property, was not designed to leave them under all their common-law disabilities in the purchase of their property. And it cannot be regarded as a self-evident truth, that, under the General Statutes, the conjugal relation is such a disablement and impoverishment of the wife, and suspension of her legal existence (1 Bl. Com. 442; *Poor* v. *Poor*, 8 N. H. 307, 314), as enables her, by purchase, to acquire and retain a valid title to property without any liability to pay for it. *M. B. & M. Co.* v. *Thompson*, 58 N. Y. 80, 84.

We must consider how essential the power of making contracts of purchase of property generally is to the enjoyment of the power of making other contracts in respect to it; how extensively married women were disabled by the common law in making the former as well as the latter; and how explicitly the legislature continued their antenuptial power of making contracts in respect to their property, without expressly excepting contracts of purchase, or expressly making any distinction between the purchase of property and other contracts respecting it. A contract of purchase, though not the only mode, is a common mode of acquiring property. Legal capacity to make such contract is, in general, a material and fundamental part of the power of making contracts in respect to property. A purchase of property is an exercise of the power of making contracts in respect to it. Of a theoretical system or series of contracts respecting a piece of property, the purchase of it is the first in natural order: and practically the purchase of it is often the contract without which the power of making other contracts in respect to it would be inoperative and worthless. A person's capacity to make, in respect to his property, any contract except the contract of purchase so often necessary for acquiring it, would be a general and comprehensive power with an extraordinary exception. And to supply such an exception by implication would be a construction not in harmony with the liberating purview of the statute.

Whether a married woman's executory contract to purchase property is authorized by the General Statutes, or any previous statute (*Jones* v. *Crosthwaite*, 17 Iowa 393, 402; 2 Perry on Trusts, *s*. 686), is a question on which we give no opinion. But we think that her capacity to purchase property, so far as it is brought in question in this case, has not been abridged since 1846; that the defendant's note, given for her property at the time the property became hers, being the note by giving which she obtained the property, was a contract by her made " in respect to such property," within the meaning of the act of 1846, and was a contract made by a " married woman holding property in her own right, * * * in respect to such property," within the meaning of Gen. Sts., *c*. 164, *s*. 13, and that this action can be maintained.

<em>Case discharged.</em>

Bingham, J., did not sit.
Smith, J., was absent.