MICHAEL H. CASHMAN, Executor, etc., Appellant, *v.* JOHN
F. HENRY et al., Respondents.

A married woman may, under the statutes as they now exist (chap. 200,
Laws of 1848 ; chap. 375, Laws of 1849 ; chap. 90, Laws of 1860 ; chap.
172. Laws of 1862), and as incident to the right to acquire property and
hold it to her sole and separate use, purchase property upon credit and
bind herself by an executory contract to pay the consideration money ;
and any obligation entered into by her, given to secure the purchase
price of property acquired and held for her separate use, may be
enforced against her the same as if she was a *feme sole;* and this,
although she had no antecedent estate to be benefited, and although the
purchase was not made for the purposes of a trade or business.

Where, therefore, a married woman as grantee, by the terms of her deed,
assumed and agreed to pay a mortgage upon the premises conveyed,
as part of the consideration of the conveyance, *held*, that she was per-
sonally liable to pay the mortgage debt; that a grantee from her,
who in the same manner assumed and agreed to pay said debt, was also
liable ; and that in an action for the foreclosure of the mortgage a judg-
ment against him for a deficiency was proper.

*Yale* v. *Dederer* (18 N. Y., 265) ; S. C. (22 id., 450), distinguished.

(Argued September 23, 1878 ; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Supe-
rior Court of the city of New York, affirming so far as
appealed from a judgment, entered upon a decision of the
court on trial at Special Term.

This action was brought to foreclose a mortgage made and
executed by Samuel Simon to plaintiff. Simon sold and
conveyed the mortgaged premises to Kate M. Cormac, a
married woman, by deed, which was accepted by her, which
contained a clause declaring that the conveyance was made
subject to the mortgage, which the grantee assumed and
agreed to pay as part of the consideration money. Mrs.
Cormac subsequently conveyed the premises to defendants
Henry, Curran & Bowen by deed containing a similar clause.
A judgment was asked herein against said defendants for any
deficiency; they defended, claiming that they were not per-
sonally liable. The usual judgment of foreclosure and sale
was rendered, but the court held that said defendants were

not personally liable, and that plaintiff was not entitled to a judgment for deficiency against them. From this portion of the judgment plaintiff appealed.

*Jacob F. Miller*, for appellant. If Mrs. Cormac was liable on her assumption of the mortgage defendants, having assumed the mortgage, are personally liable. (1 Hilliard on Mortgages, 357; *Blyer* v. *Monholland*, 2 Sand. Ch. R., 478; *Ferris* v. *Crawford*, 2 Denio, 595; *Morris* v. *Oakford*, 9 Barr [Penn.], 499; *Flagg* v. *Thurber*, 14 Barb., 201; *Andrews* v. *Wolcott*, 16 id., 21; *Marsh* v. *Pike*, 1 Sand. Ch. R., 210; S. C., 10 Paige, 595; *Halsey* v. *Reed*, 9 id., 446; *Trotter* v. *Hughes*, 12 N. Y., 74; *Burr* v. *Beers*, 24 id., 178; *Lawrence* v. *Fox*, 20 id., 268; *Belmont* v. *Cowan*, 22 id., 439; *Gibert* v. *Peteler*, 38 id., 165; *Thorp* v. *Keokuk Coal Co.*, 48 id., 257.) Although at common law a married woman could not make a contract on which she would be liable at law, she would be chargeable in equity with any debt created by her in connection with her separate estate. (Story's Eq. Jur., §§ 1397, 1399, 1400, 1401, 1401a, 1401b, 1401c; *Gardner* v. *Gardner*, 7 Paige, 112; S. C., 22 Wend., 526; *North Am. Coal Co.* v. *Dyett*, 7 Paige, 9; *Quassauc Bk.* v. *Waddell*, 8 Sup. Ct. R., 128; *Francis* v. *Wizzell*, 1 Madd., 258; *Crosby* v. *Church*, 3 Beav., 489.) By the deed from Simon to Mrs. Cormac the property became a part of her separate estate, and she entered into a contract in reference to it when she assumed the mortgage. (*Ballin* v. *Dillaye*, 37 N. Y., 35; Laws 1848, chap. 200; Laws 1860, chap. 90; Laws 1862, chap. 172; *Yale* v. *Dederer*, 18 N. Y.; S. C., 22 id., 450; *Owen* v. *Cawley*, 36 id., 604; *Fowler* v. *Seaman*, 40 id., 593; *Corn Ex. Ins. Co.* v. *Babcock*, 42 id., 614; *Prevot* v. *Lawrence*, 5 id., 221; *Hinckley* v. *Smith*, id., 24; *Fresking* v. *Rolland*, 53 id., 425; *Bodine* v. *Killeen*, id., 93; *Maxon* v. *Scott*, 55 id., 251; *Loomis* v. *Ruck*, 56 id., 462; *Manhattan Brass Co.* v. *Thompson*, 58 id., 83; *Smith* v. *Dunning*, 61 id., 249; *Westervelt* v. *Ackley*, 62 id., 506; *Payne* v. *Burnham*, id., 74, *Conlin* v.

*Cantrell*, 64 id., 218; *Barton* v. *Beer*, 35 Barb., 78, 80; *Klen* v. *Gibney*, 24 How. Pr., 31; *Flynn* v. *Powers*, 36 id., 289; S. C., *Walsh* v. *Powers*, 43 N. Y., 25; *Vrooman* v. *Turner*, 15 Sup. Ct. R., 79; *Firemen's Ins. Co.* v. *Bay*, 4 Barb., 407; *Hudson* v. *Hudson*, 1 Sheldon, 391; *McVoy* v. *Cantrell*, 5 N. Y. W. D., 105; *Winchell* v. *Mears*, 6 id., 400; 119 Mass., 500; *Huyler's Excrs.* v. *Atwood*, 26 N. Y. Eq. R., 504; S. C., 1 Stewart, 275; *Gosman* v. *Cruger*, 69 N. Y., 89.) Defendants having assumed the mortgage in terms the burden of proof lay upon them to show that their grantor was not liable. (Best on Evidence, §§ 268, 269, 271, 272, 275; Greenleaf on Evidence, § 74; *Amos* v. *Hughes*, 1 Moo. & R., 464; *Huckman* v. *Ferine*, 3 M. & W., 505; *Willis* v. *Barber*, 7 id., 425; *Pusey* v. *Wright*, 31 Penn., 387; *Powers* v. *Russell*, 13 Pick. [Mass.], 77; *Nash* v. *Hall*, 4 Ind., 449; *Givens* v. *Fedmore*, 8 Ala., 746; *Costigan* v. *Mohawk R. R. Co.*, 2 Den., 609; *Tyler* v. *Colmes*, 2 Miss., 121; *Veiths* v. *Hagge*, 8 Iowa, 192; *Kent* v. *White*, 27 Ind., 390; *Ford* v. *Simons*, 13 La. An., 397; *Spaulding* v. *Harvey*, 7 Ind., 429; *Leete* v. *Gresham Life Ins. Co.*, 7 Eng. L. & Eq., 578; S. C., 15 Jurist [Ex], 1161; *Hollister* v. *Bender*, 1 Hill, 150; *Simpson* v. *Hart*, 14 Johns., 63; *Wakeman* v. *Grover*, 4 Paige, 23; *Johnson* v. *Hudson R. R. Co.*, 5 Duer, 21; *Greene* v. *Waggoner*, 2 Hilt., 297; *Smith* v. *Dunning*, 61 N. Y., 249.) It is not necessary in order to charge the separate estate of a married woman that the contract was for the benefit of it, it is sufficient if it relate thereto. (*Corn Ex. Ins. Co.* v. *Babcock*, 42 N. Y., 624; Laws 1860, chap. 90; *Ballin* v. *Dillaye*, 37 N. Y., 35.) It was not necessary to make Mrs. Cormac liable that the contract should charge her separate in express terms. (*Quassaic Bk.* v. *Waddell*, 8 Sup. Ct. R., 128; *Corn Ex. Ins. Co.* v. *Babcock*, 42 N. Y , 624; *Wiley* v. *Hutchins*, 17 Sup. Ct. R., 504; *Coster* v. *Isaacs*, 24 Superior Ct. R., 176; *Westervelt* v. *Ackley*, 4 Sup. Ct. R., 504; *Hoffman* v. *Treadwell*, 39 Superior Ct. R., 188; *McVey* v. *Cantrell*, 13 id., 528; 62 N. Y., 506; *Williamson* v. *Dodge*, 21 Sup. Ct. R., 498; *Kelby* v. *Long*, 4 id., 164; *White* v. *Wager*, 25 N. Y., 333.)

*Geo. C. Holt*, for respondents. If Mrs. Cormac was not personally liable for the payment of the mortgage defendants were not. (*King* v. *Whitely*, 10 Paige, 465; *Trotter* v. *Hughes*, 12 N. Y., 74; *Vrooman* v. *Turner*, N. Y. D. Reg., June 2, 1877.) Mrs. Cormac being a married woman was not liable personally to pay the mortgage. (*Yale* v. *Dederer*, 18 N. Y., 265; 22 id., 450; 68 id., 329; *Nash* v. *Mitchell*, 71 id., 199.) A debt incurred by a married woman on the purchase of property on credit was not enforceable at common law against her separate estate as having been for its benefit. (Co. Litt.; 3, *a ; Schmidt* v. *Costa*, 3 Abb. Pr. [N. S.], 188; *Robinson* v. *Rivers*, 9 id., 144; *White* v. *McNett*, 33 N. Y., 371; *Knapp* v. *Smith*, 27 id., 277; *Ledeliey* v. *Powers*, 39 Barb., 555; *Baker* v. *Harder*, 6 T. & C., 440; *Kinne* v. *Kinne*, 45 How. Pr.. 61.) A married woman who executes a bond secured by a mortgage upon her separate real estate is not, in the absence of special circumstances bringing the contract within the statutory exceptions, liable for a deficiency on foreclosure. (*Payne* v. *Burnham*, 62 N. Y., 74; *Manhattan Life Ins. Co.* v. *Glover*, 14 Hun, 153; *Kidd* v. *Conway*, 65 Barb., 158; *Brown* v. *Hermann*, 14 Abb. Pr., 394.) The burden of proof was upon plaintiff to show affirmatively by competent evidence that Mrs. Cormac's acceptance of the deed from Simon made her personally liable to pay the bond. (*Hallock* v. *De Mum*, 2 T. & C., 350; *Kidd* v. *Conway*, 65 Barb., 158; *Nash* v. *Mitchell*, 71 N. Y., 199; *Manhattan Life Ins. Co.* v. *Glover*, 14 Hun, 153.) To maintain an action on a promise made by one person for the benefit of a third person it must be shown that the promisee was under a legal obligation to the third party. (*Vrooman* v. *Turner*, N. Y. D. Reg., June 2, 1877; *Garnsey* v. *Rogers*, 47 N. Y., 233; *Merrill* v. *Green*, 55 id., 270.)

Andrews, J. This court in *Vrooman* v. *Turner* (69 N. Y., 280), affirmed the doctrine of *King* v. *Whitely* (10 Paige, 465), that where a grantor of an equity of redemption in mortgaged premises is not personally liable to pay the mortgage

debt, and has no legal or equitable interest in such payment, except so far as the mortgage may be a charge upon the lands mortgaged, his grantee thereof incurs no liability to the holder of the mortgage by reason of a covenant on his part contained in the deed, to assume and pay the mortgage. The grounds of this doctrine are fully stated in the opinion in the cases cited, and need not be here adverted to. The defendants claim the benefit of the rule, and they were by the judgment of the court below exonerated from liability for the deficiency arising on the foreclosure sale in this action, on the ground that Mrs. Cormac their grantor was not personally bound or liable to pay the plaintiffs' mortgage. The mortgage was executed by one Simon to the plaintiff in 1872, to secure the payment of his bond for $20,000. In 1873, Simon the owner of the equity of redemption in the mortgaged premises, conveyed them by deed to Kate M. Cormac a married woman, for the consideration as expressed in the deed of $31,000, subject to the mortgage which she as grantee by the terms of the deed assumed, and agreed to pay as a part of the consideration of the conveyance.

In 1874 Mrs. Cormac, together with her husband deeded the premises to the defendants, subject to the mortgage, which they in turn assumed and agreed to pay.

It was not shown upon the trial that Mrs. Cormac when she purchased the land had any separate estate, or that she was engaged in any trade or business on her own account or otherwise. The purchase comprised four city lots, but it does not appear for what purpose they were bought, whether for use or re-sale. The finding of the court that Mrs. Cormac was not personally liable to pay the plaintiff's mortgage, notwithstanding her express agreement, contained in the conveyance from Simon, was put upon the ground that a married woman has no general capacity under the acts of 1848, 1849, 1860 and 1862, to bind herself by a contract to pay the purchase-price of land bought by, and conveyed to her, and that her common law disability attaches to and makes her contract void, unless it appears that the purchase

was made, and the liability incurred in the prosecution of a trade or business, carried on by her, on her separate account, and that to charge her estate in equity for the debt, there must have been an antecedent separate estate capable of being charged, and the intention to charge it expressed in the contract, or the consideration must be one going to the direct benefit of such estate.

The question presented is one of considerable importance, and not free from difficulty. The case of *Yale* v. *Dederer* (18 N. Y., 265; 22 id., 450), arose under the acts of 1848 and 1849, and it was determined in that case, that the statutes then under consideration did not remove the common law disability of a married woman to contract debts, or bind herself by a personal obligation, and that her engagements in any case, could only be enforced by way of equitable charge upon her separate estate, and that such charge could only be created by an intention declared in the contract, which is the foundation of the charge, or when the contract was for the direct benefit of her estate; and it was held that her estate was not charged by the execution of a promissory note, which she had signed in the ordinary form of such a contract, as surety for her husband. The construction put upon the acts of 1848 and 1849, in *Yale* v. *Dederer* has been followed in other cases, and the decision in that case is controlling as to the construction of these statutes, and in respect to cases coming within the same principle.

It is difficult to hold in view of the decision in *Yale* v. *Dederer*, that under the acts of 1848 and 1849, the contract of a married woman to pay for land purchased by her is valid, either in law or equity, or enforceable against her estate, when she receives no other benefit from the transaction than the benefit implied from the acquisition of the title to the land purchased, at least when the land purchased constitutes her entire estate. This view of these statutes does not however involve the injustice of allowing a married woman to obtain the title to land upon a promise to pay the purchase-price,

and then to hold it free from any claim or lien for the purchase-money. Upon the well-settled doctrine of equity, if her bond, or other security for the payment of the consideration is void, the land would be subjected upon principles quite independent of any doctrine appertaining to the separate estates of married women, to a lien in favor of the vendor, for the unpaid purchase-money. The act of 1848, as amended in 1849, so far as it authorized a married woman to take by gift or grant from any person other than her husband, real or personal property, was not an enabling statute. This capacity she had at common law. (*Darby* v. *Callaghan*, 16 N. Y., 71; *Knapp* v. *Smith*, 27 id., 278.) The new capacity given to a married woman by that act, was to hold the estate or property acquired by her in any of the modes designated therein as her separate property without the creation of a trust, or the intervention of trustees, free from the control or power of disposition of the husband with the right to convey and devise it as if she were a *feme sole*.

In *Huyler's Exrs.* v. *Atwood* [26 N. J., 504; S. C., 28 id., 275), a case almost identical in its facts with this, the same question arose as to the liability of the grantees of a married woman, who in the conveyance to them had assumed the payment of a mortgage on the land, which she had likewise assumed in the conveyance from her grantor, to pay a deficiency arising on the foreclosure of the mortgage.

The third section of the New Jersey statute of 1852, relating to married women, is in nearly the same words as the same section of our statute of 1848, and the court affirmed the liability of the defendants for the deficiency, upon the ground that the covenant of their grantor to assume and pay the mortgage in the conveyance to her was valid, notwithstanding her coverture, and the conclusion as to the validity of her covenant, was reached, upon the ground that the Legislature by giving to married women the capacity to acquire real estate by grant, impliedly authorized them to enter into a contract of purchase, and to bind themselves to pay the purchase-money.

The limited construction put upon our statute in *Yale* v. *Dederer*, would not probably justify us in adopting in its full extent the view of the New Jersy court, but this court in *Ballin* v. *Dillaye* (37 N. Y., 35), which arose under the acts of 1848 and 1849, and 1860, went very far towards holding a married woman liable on her bond, given on her purchase of land for the payment of the purchase-money. In that case the question was, whether the defendant Mrs. Dillaye, a married woman, was liable on her bond, for a deficiency upon a foreclosure of a mortgage, executed by her to the plaintiffs. She obtained title to the premises by purchase at a foreclosure sale of a mortgage held by a bank. The plaintiffs at the time held a junior mortgage on the same premises, and intended upon the sale to bid to the extent of their mortgage. Mrs. Dillaye wished to prevent their bidding. A written agreement was accordingly executed between her and the plaintiffs, by which, in substance, the plaintiffs agreed to advance $7,000 to clear the title, and not to bid at the sale ; and she agreed to recognize their mortgage as valid, and to give them on her purchasing the premises, her bond and mortgage on part of the premises, to secure the payment of their mortgage debt, and the $7,000 advanced. Pursuant to the agreement the plaintiffs advanced the money, and refrained from bidding, and the defendant bought the premises, and executed to them a bond and mortgage covering the advance, and the amount of their original mortgage. On the trial of the question of Mrs. Dillaye's liability for the deficiency, the plaintiffs offered to prove that at the time of the transaction, she had a separate estate. There was no offer to prove, nor did it appear that Mrs. Dillaye had any interest in the mortgaged premises prior to her purchase on the foreclosure of the bank mortgage, or that her antecedent separate estate was pledged for the mortgage debt, or had any relation to the mortgaged premises. The Special Term rejected the proof offered, and held that the defendant was not liable for the deficiency, and the decision of the Special Term was affirmed by the General

Term.  This court reversed the judgment, and directed a new trial.

It is a little difficult to ascertain the precise ground upon which the decision in this court proceeds.  The court in reference to the fact that Mrs. Dillaye had a separate estate, say that it was relevant and material, and in view of the offer on the trial to prove the fact, it is assumed in the consideration of the case.  But I do not understand that her liability is put upon the ground that she had a separate estate at the time of the purchase; certainly it was not put upon this ground alone.  It is not perceived how Mrs. Dillaye's liability at law or in equity for the deficiency, could be affected by the fact that she had a separate estate at the time of the transaction, unless it was connected by contract or otherwise with the property purchased.  But the court seem to hold, that as she by the purchase on the foreclosure of the bank mortgage, acquired not only the property included in the plaintiffs' mortgage, but other lots in addition, the obligation entered into by her was for the benefit of her estate, and that her whole estate was therefore chargeable with the deficiency.

It is claimed on the part of the plaintiff that the case of *Ballin* v. *Dillaye*, decides in his favor the question now presented.  But without considering whether the circumstances under which the bond in that case was given, distinguish it in principle from this, I am of opinion that the covenant of the defendant's grantee to assume and pay the Simon mortgage, was binding and valid, on the ground that under the acts of 1860 and 1862 in connection with the previous acts, a married woman may purchase property on credit, and bind herself by a contract to pay the purchase-money, and that it is not a material circumstance in respect to her liability, whether she had any antecedent separate estate, or whether the contract on her part was a prudent, wise, and advantageous one.

The act of 1860 greatly enlarged the civil capacity of a *feme covert*, beyond what was conferred by the previous leg-

islation. By the *second* section she is empowered to bargain, sell, assign, and transfer her separate property, and carry on any trade or business, and perform any labor or services on her sole and separate account. The *third* section authorizes a married woman possessed of real estate as her separate property to bargain, sell, and convey the same, or to enter into any contract in reference thereto, with the assent in writing of her husband, or by the authority of the court, obtained as provided in the section. The *seventh* section provides that she may sue and be sued in all matters having relation to her separate property, or in relation to property which might thereafter come to her by descent, devise, bequest, or the gift of any person except her husband in the same manner as if she were sole.

The *eighth* section declares that the husband shall not be bound by any bargain or contract of the wife, "in respect to her sole or separate property, or any property which may hereafter come to her by descent, devise, bequest, or the gift of any person, except her husband," or by any bargain or contract entered into by her in or about the carrying on of any trade or business, under any statute of the State, or render him, or his property, in any way liable therefor.

The authority given to a married woman by this statute to carry on any trade or business, on her own account, and to have and control her own earnings, whether living with her husband, or living separate from him, worked a radical change in the pre-existing law, and it has been held by this court in several cases, that as incident to her authority under this statute to carry on a trade or business, a married woman may enter into any contract in respect thereto. She may purchase real or personal property on credit for the purposes of the trade or business into which she is about to enter, and bind herself by contract of payment, and also by her contracts made in the course of the business in which she engages. (*Bodine* v. *Killeen*, 53 N. Y., 93; *Frecking* v. *Rolland*, id., 423.) In the case last cited, it was said : "The power to carry on a separate trade or business, includes the

power to borrow money, and to purchase upon credit, implements, fixtures, and real or personal estate, necessary or convenient for the purpose of commencing it, as well as the power to contract debts in its prosecution, after it has been established."

The limitation upon the power of a married woman to deal with her real estate, contained in the third section of the act of 1860, which made the assent of her husband, or the order of the court necessary to the validity of her conveyance of her lands, or her contracts in respect thereto, was removed by the amendment of 1862, and a clause was added to the section expressly authorizing her to enter into any of the usual covenants for title, in her contracts in relation to, or her conveyances of her real property, which covenants the section declares shall be obligatory to bind her separate property.

It will be observed that these statutes confer upon a married woman the broadest and most comprehensive powers over her separate real and personal property. Her power of disposition is absolute and unqualified. She may sell or give it away. She may enter into any contract in respect to her separate real property " with the same effect, and in all respects as if she were unmarried," and this court has held that as incident to her separate ownership, she is liable for torts committed in its management, and for the fraud of her agent in dealing with third persons in respect to it. (*Rowe* v. *Smith*, 45 N. Y., 230; *Baum* v. *Mullen*, 47 id., 577.) She may engage in business, and incur the most dangerous, and even ruinous liabilities in its prosecution, and they will be enforced against her to the same extent as if she was unmarried. She is no longer regarded as under the tutilage of the court, but the new legislation assumes that she is capable of managing her own interests.

But it is insisted that she may not bind herself by a contract for the purchase of land, if she has no antecedent estate to be benefited, or if the purchase is not made for the purposes of a trade or business. The policy of such special

limitation in view of the general scope of our statutes, and the conceded power of married women to charge and dispose of their property, and incur liabilities in its management, is not apparent.

In *Stewart* v. *Jenkins* (6 Allen, 300), the Supreme Court of Massachusetts, under a statute of that State which provides " that a married woman may bargain, sell, and convey her separate real and personal property, enter into any contract in reference to the same, carry on any trade and business, and perform any labor and services on her sole and separate account, and sue and be sued in all matters having relation to her separate property, etc., as if she were sole," held that a married woman was bound by a note given as the consideration in part of a conveyance of real estate, on the ground that it was a contract in reference to her separate estate within the statute, and the court rejected as too narrow, the construction insisted upon by the defendant, that the power given to a married woman by the statute to enter into a contract in reference to her separate estate was limited to the estate owned by her when the contract was made.

The section of the Massachusetts statute considered in *Stewart* v. *Jenkins*, is very nearly like the third section of our statute of 1860 as amended in 1862. But the intention of the Legislature to confer upon a married woman, the general capacity to enter into a valid executory contract to pay for property purchased by her, is indicated by the seventh and eighth sections of the act of 1860, as amended in 1862. The seventh section of the act of 1860 was amended by the act of 1862, by inserting the word *purchase*, in the first clause of the section, so that it should read : " Any married woman may while married, sue and be sued in all matters having relation to her sole and separate property, or which may come to her by descent, devise, bequest, *purchase*," etc., and the eighth section was amended by inserting the same word in that section, so as to embrace in the exemption of the husband, exemption from liability on the contracts of the wife made in respect to property coming to her by purchase.

These amendments indicate that the Legislature had in view the acquisition by a married woman of the title to property by purchase, and the clear implication from the provision in the eighth section, exempting the husband from liability upon the wife's contracts or bargains, in respect to property purchased by her, is that she may bind herself personally by such contracts; and a contract to pay the consideration of land conveyed to her, is I think a contract in respect to property coming to her by purchase within the meaning of the statute.

The conclusion is that under the statutes as they now exist, a married woman, as incident to her right to acquire real and personal property by purchase and hold it to her sole and separate use, may purchase property upon credit, and bind herself by an executory contract to pay the consideration money, and that her bond, note, or other engagement given and entered into to secure the payment of the purchase price of property acquired and held for her separate use may be enforced against her in the same manner, and to the same extent as if she was a *feme sole*, and that her liability does not depend upon the proof or existence of special circumstances, but is governed by the ordinary rules, which determine the liability of persons *sui juris*, upon their contracts.

The judgment should be reversed, and a new trial ordered.

All concur, except MILLER and EARL, JJ., absent at argument.

Upon a subsequent motion the remittitur was ordered to be amended so that the judgment for foreclosure and sale be affirmed, and that portion as to a deficiency be reversed and new trial ordered.   All concur.