(67 App. Div. 245.)

HOWARD et al. v. ROBBINS et al.

(Supreme Court, Appellate Division, Fourth Department. December 3, 1901.)

1. MORTGAGES—ASSUMPTION BY GRANTEE—PRINCIPAL—SURETY.

Where a grantee of property assumes the payment of a mortgage on such property executed by his grantor, the grantee becomes the primary debtor, and the mortgagor is surety.

2. SAME—ENFORCEMENT—RESORT TO PROPERTY.

Where the grantee of mortgaged property has assumed the payment of the mortgage, the property must first be resorted to, before any enforcement can be had on the agreement of assumption.

3. SAME—FORECLOSURE—DEFICIENCY.

A grantee assuming a mortgage on the granted premises is liable for any deficiency which may exist after the sale on foreclosure.

**4. SAME—EXTENT OF LIABILITY.**

Where a grantee assumes a mortgage on the property granted, his liability depends on, and is coextensive with, the personal liability of his grantor.

**5. SAME—RIGHTS OF MORTGAGEE.**

An agreement by a grantee to pay a mortgage on the granted premises inures to the benefit of the mortgagee, though a stranger to the agreement.

**6. SAME—RIGHT OF FIRST MORTGAGOR—PAYMENT—ASSIGNMENT.**

Where a grantee who has assumed a mortgage on the premises executes a second mortgage thereon, and the second mortgagee procures an assignment of the first mortgage, and refuses to foreclose the same, but collects the rents, to apply on its second mortgage, the first mortgagor has a right to pay the amount due on the first mortgage, and require an assignment to him, so that he may foreclose and fix the liability of his grantee.

**7. SAME—NOTICE—UNRECORDED INSTRUMENT—INQUIRY.**

Where a grantee under a quitclaim deed, who by a separate unrecorded instrument covenants to pay a mortgage on the premises executed by its grantor, conveys by a deed containing a covenant that its grantee will pay the mortgage, one taking a second mortgage from the last grantee is put on inquiry to ascertain the respective rights and liabilities of such prior parties as to the first mortgage.

**8. SAME—FORECLOSURE—DECREE—ASSIGNMENT—MOTION.**

Where a decree of foreclosure and sale is entered, but the owner of the decree refuses to sell, and the mortgagor has conveyed the premises to a grantee who covenanted to pay the mortgage, the right of such mortgagor to an assignment of such decree and mortgage on payment of the amount due may properly be determined on motion in the action.

**9. SAME—RECEIVER.**

Where there are two mortgages executed by different mortgagors on a leasehold, the first mortgagor having conveyed to a grantee who assumed the payment of the mortgage, and the holder of the first mortgage refuses to sell, a receiver should be appointed to collect the rents and apply in payment of the first mortgage.

Adams, P. J., and McLennan, J., dissenting.

Appeal from Erie county court.

Action by Caroline H. Howard and another against Walter G. Robbins and others. From an order directing the defendant the Third National Bank of Buffalo to execute and deliver to defendant Walter G. Robbins an assignment of the judgment of foreclosure and sale entered in the action, and of the bond and mortgage on which the judgment is founded, on paying the amount due thereon, and from an order appointing a receiver, the defendant bank appeals. Orders affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Loran L. Lewis, for appellant.

William L. Marcy, for respondent.

SPRING, J. In 1897 the defendant Robbins purchased at a foreclosure sale a leasehold interest in certain premises on Niagara street, in the city of Buffalo. Robbins was then the manager of the Ellicott Square Bank, in that city, and acquired title to the premises on behalf of that bank, which paid in cash over $1,800 on the purchase price of the premises at the time. Robbins, im-

mediately upon becoming vested with the legal title, and in accordance with an arrangement then made, gave his bond, accompanied by a mortgage' on these premises, to secure the payment of $5,000 loaned to him by Ethan H. Howard, the mortgagee. At the same time the bank gave to Robbins its written undertaking to pay the said bond and mortgage, and to protect him from any liability on account thereof. On March 21, 1898, he conveyed the premises to the bank by quitclaim deed. By deed dated September 14, 1899, but not acknowledged or delivered until November of that year, the bank conveyed the premises to Harriette E. Jones, who by a clause in the conveyance assumed the payment of the mortgage. On November 9, 1899, Harriette E. Jones executed a mortgage on these premises to Mary H. Ney to secure the payment of $2,000, and on that day the mortgagee assigned the mortgage to the Third National Bank of Buffalo, which still holds it. The holders of the first mortgage commenced this action to foreclose the same, asking for judgment for deficiency against the defendant Robbins. The action was prosecuted to judgment, and the premises were advertised for sale pursuant to the judgment on March 29, 1901. On the 28th day of March the defendant the Third National Bank paid the amount of the judgment, and obtained an assignment of the same from the plaintiff, and declined to sell the property. The defendant Robbins insisted on the sale of the property, and offered to pay the amount of the judgment and take an assignment thereof; but the Third National Bank refused to assign the same, as did the attorney for the holders of the mortgage, to whom a like offer was made to pay the judgment and take an assignment thereof. The leasehold is subject to the payment of rent to the owners of the fee, and to provide for this, and also to meet the taxes accruing during the pendency of this appeal, a receiver was appointed. The lease has nearly 15 years of life, and the revenues are valuable; and the Third National Bank insists that it can apply the same on its second mortgage until paid, and still retain the judgment, for the payment of which the defendant is personally liable. Inasmuch as the value of the leasehold will materially lessen as the expiration of the term of the lease approaches, and the judgment will continue to increase by accruing interest, it is very important to the respondent that his rights be determined. The respondent contends that a sale of the premises should be ordered pursuant to the judgment, or an assignment of the same be made to him upon payment thereof, or else that he be relieved from any personal liability for its payment, to each of which the appellant refuses to accede.

When the bank assumed the payment of the bond and mortgage, it became the primary debtor, and Robbins its surety. This is elementary. Wilts. Mortg. Forecl. par. 223; Jones, Mortg. (5th Ed.) par. 741. It is equally fundamental that the land or the leasehold must first be resorted to, before any enforcement can be had upon the covenant or agreement of assumption. The grantee or person assuming the payment of a mortgage is liable for any deficiency which may exist after the application of the avails of the

sale pursuant to the judgment upon the mortgage debt. Thomas, Mortg. par. 577. In the present case, therefore, Robbins can obtain no redress against the Ellicott Square Bank upon its agreement to indemnify and save him harmless until the extent of the harm he has suffered has been measured and ascertained by the sale of the land, and the payment of the avails in diminution of the judgment. If the Ellicott Square Bank is liable on its agreement to Robbins, then Harriette E. Jones is liable, also, on her assumption of the mortgage in the conveyance to her. Liability under an assumption clause is based upon the personal liability of the person for whose benefit it is given. The contract is between the grantor and grantee, and is one of indemnity; and if there is no danger, no liability to the grantor, then there is no occasion for indemnity. This principle is thoroughly settled by many adjudications in this state. Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195; Wager v. Link, 134 N. Y. 122, 31 N. E. 213. But, while the mortgagee is a stranger to the covenant or agreement to pay the mortgage, it inures to his benefit, on the principle that the security taken by a surety for his protection can be reached by the principal creditor, even though he was not aware of its existence. Garnsey v. Rogers, 47 N. Y. 233, 7 Am. Rep. 440.

It is contended in the present case that the agreement between the Ellicott Square Bank and Robbins was a secret agreement, and unknown to Harriette E. Jones, and hence her assumption does not render her personally liable. It is also urged that the Third National Bank by an examination of the record would have found nothing upon which to hinge any personal responsibility of the Ellicott Square Bank, and therefore could not know that Robbins was a surety, and the bank the primary debtor. The agreement was not secret in the sense that it was concealed or hidden from any one. It was a writing entered into pursuant to a formal resolution of the board of directors of the bank, but there was no occasion to blazon it forth. Whether public or private, recordable or nonrecordable, known or unknown to the subsequent grantee, makes no difference to one who has personally assumed the payment of the mortgage debt. The Ellicott Square Bank and Robbins had a right, as between themselves, to regulate their liability. Primarily they were the only parties interested in this agreement, and, if it was valid and binding between them, it was of sufficient strength to support an assumption of the mortgage by the subsequent grantee. The test is, was the bank liable for the payment of the mortgage? If so then the undertaking by Harriette E. Jones was enforceable, and there was no hiatus of personal liability in the chain of conveyances. Even a parol agreement by the grantee to pay a mortgage for which the grantor is personally responsible is enforceable. Taintor v. Hemingway, 18 Hun, 458, affirmed on opinion below in 83 N. Y. 610; Jones, Mortg. par. 750; Thomas v. Dickinson, 12 N. Y. 364; Remington v. Palmer, 62 N. Y. 31. In Wager v. Link, 134 N. Y. 122, 31 N. E. 213, Jennie and Edward Sully gave a mortgage upon premises owned by them as collateral security to their bond accompanying the mortgage. After-

ward they conveyed the premises to one Kellogg by quitclaim deed, which contained no covenant to pay the mortgage. Later on, Kellogg, the owner of the premises, gave his bond to the mortgagee of the Sully mortgage, covenanting to pay whatever of the mortgage debt remained unpaid after the obligee had exhausted his remedy against the premises. Kellogg conveyed to Link, who assumed the payment of this mortgage. The bond of Kellogg was not recorded, and Link did not know of its existence. The referee held that he was not personally liable on the assumption clause, and the general term sustained the referee. The ground of the decision of the general term was the facts above recited, showing the absence of knowledge by Link of the bond of his grantor, and, as the deed contained no assumption clause, he had a right to believe that this grantee, his immediate grantor, was not personally chargeable with the payment of the mortgage. The court at general term cited the case of Vrooman v. Turner, supra, and kindred cases, to uphold its decision. Upon appeal to the court of appeals the judgment was reversed, and Link held liable upon his assumption covenant. The court held that neither the fact he was not aware of the bond Kellogg had given to the mortgagee, nor that Kellogg's liability was by an instrument independent of the conveyance to him, exonerated Link. After a sale of the premises the case was again before the court of appeals. 150 N. Y. 549, 44 N. E. 1103. The defendant Link insisted that the decision on the former appeal, adjudging that the covenant in his deed inured to the advantage of the holder of the mortgage, "is a departure from, or at least an extension of, the doctrine of equitable subrogation, as heretofore understood and applied." The court disagreed with this contention, and, after discussing the proposition, says (page 555, 150 N. Y., and page 1104, 44 N. E.):

"This bond, although given subsequently to his acquiring title to the land, was executed and delivered before his conveyance to Link; and it does not admit of doubt that it created an obligation on the part of Kellogg which could have been enforced in the present action, if the plaintiff had made Kellogg a party, and sought relief against him on the bond. When Kellogg took the covenant from Link, he had an interest to protect himself against his liability on the bond. It was, it is true, a personal covenant between Kellogg and Link. But it is generally true in cases of assumption clauses in deeds that the covenant is in form between the grantee and grantor only; but, where the grantor is bound for the mortgage debt, then equity treats it as a covenant of indemnity to the grantor, and the grantee as a surety for the grantor against his liability for the debt, of which relation the creditor may avail himself under the general principle adverted to. This beneficent principle prevents unnecessary litigation, and appropriates the security to re-enforce the original obligation according to manifest justice and equity. It is urged that the fact that Kellogg's liability was not created by his deed from the mortgagors, but by a subsequent and independent transaction between him and the plaintiff, renders the doctrine of Halsey v. Reed, 9 Paige, 446, and the cases following it, inapplicable. It is true that most of the cases in which the principle has been applied in our courts have been cases where the covenant to assume and pay the mortgage was contained in the deed conveying the premises. But the principle that the creditor may avail himself of the covenant does not rest upon the fact that it was contained in, or was contemporaneous with, the conveyance of the land. The point to be determined in each case was whether the grantor in the deed had incurred

a personal liability to pay the debt. If he had, it was wholly immaterial whether the liability was created by a covenant in his deed, or by an independent writing. It was necessary to establish his liability in some way, for, if he was under no liability, the covenant of his grantee did not place the latter in the position of surety for the grantor, and, the grantor being under no liability to the creditor, the covenant could not inure to his benefit. The deeds in those cases were only important because they contained the personal covenant necessary to create the liability. But a bond or other creditor who has no security by mortgage, but only the personal liability of the obligor or principal debtor, may, for the same reason as in mortgage cases, avail himself of an indemnity held by the obligor or original debtor from a third person against his liability. So, also, the fact that Kellogg assumed no liability to his grantors for the mortgage debt, or otherwise by any agreement with them, is immaterial. He incurred a liability by his bond to the plaintiff, subsequently given, and when he conveyed to Link he imposed upon him the primary duty to discharge that obligation, as a part consideration for the conveyance."

While it appears to me that the authorities cited effectually dispose of the contention that Harriette E. Jones was not liable because the liability of the bank depended upon an agreement which may not have been known to her, and which was not recorded, there is another suggestion which is equally potential. By assuming the payment of the mortgage in the conveyance, a clear intention is manifest on her part to become liable for any deficiency which might arise. This recital in the deed, for whatever it was worth, was binding upon subsequent incumbrancers or purchasers. It was notice to them that she had assumed the payment of the mortgage, and it was incumbent upon them to ascertain what basis there was for this assumption of liability. They were put upon their inquiry. They must have realized that the assumption clause was not inserted in the conveyance as an idle ceremony. They could not ignore it or treat it as surplusage. If they expected to be relieved of any personal responsibility founded upon a break in the chain of those liable for the payment of the mortgage debt, they must be certain that their premise was correct, and the break existed. This is especially true when it is evident that personal responsibility may be made effective by an agreement separate from the conveyance, and not recorded. The Ellicott Square Bank was located in the city of Buffalo, as was also the appellant; and Harriette E. Jones also resided in that city. The slightest diligence on the part either of the appellant or the grantee, Harriette E. Jones, would have apprised them of the existence of the agreement by which the Ellicott Square Bank became liable for the payment of this mortgage. If these views are correct, Robbins was entitled, upon payment of the bond and mortgage, to compel its assignment to himself. The land was the property primarily to be used to meet the indebtedness, but Robbins was personally liable to the plaintiffs on his bond; and while as to the Ellicott Square Bank he was a surety, and it the principal debtor, yet the plaintiffs might maintain an action at law on the bond, or hold him primarily liable for any deficiency accruing on the sale.

It is urged that the holder of the second mortgage had the right, as junior incumbrancer, to pay the mortgage, and require its assignment, or, if not assigned, it would be subrogated to all the

rights of the plaintiffs. That principle ordinarily obtains, but the rights of the holder of the second mortgage are certainly not superior to those of Robbins. The doctrine of subrogation is available to any one who pays a debt for which he is responsible to the creditor, but among other debtors is secondarily liable. If there had been no assumption by Harriette E. Jones or the Ellicott Square Bank, Robbins could have paid the first mortgage and compelled an assignment to him, or, if paid without assignment, he would have been substituted to the rights of the holders of the mortgage. Whether his grantees were personally liable or not, he could insist that the land should be the fund out of which the mortgage debt was to be paid, as far as it would meet the indebtedness. The doctrine of subrogation is founded on "equity and justice," and a junior incumbrancer cannot successfully assert its adoption where it will be to the disadvantage of one whose rights are superior to those it possesses. A third mortgagee may pay the first lien and stand in the place of the first mortgagee, but he may not apply the income accruing from the property in payment of the third lien to the exclusion of the second mortgage. If the contention of the appellant is correct, it has obtained by its assignment of the mortgage in suit greater rights than the plaintiffs possessed. With the plaintiffs the holders of the mortgage, Robbins could pay the lien and compel its assignment to him, and require that the rents be applied toward its extinguishment; but the appellant contends that this right, which is valuable to him, has been lost because it has purchased the mortgage. The Third National Bank by its assignment acquired whatever rights the mortgagee or the judgment creditors possessed, and no more. The rights Robbins had when the judgment was held by the plaintiffs still inure to him. They cannot be cut off or impaired against his protest. The appellant acquired its lien with knowledge of the first incumbrance. It knew that the land must first be devoted to the extinguishment of that lien. It knew that the first mortgage was collateral security to the bond given by Robbins. It could not assert the principle of equitable subrogation to the detriment of the plaintiff, whose rights were inherent in that first obligation before the second mortgage had any existence. The injustice of the appellant's position is obvious. It expects, under its assignment, to apply the rents to the payment of its mortgage, a second lien, and still hold the plaintiff liable for the first mortgage, with its accumulation of interest, while the value of the leasehold is constantly depreciating. There is no principle of equity which will uphold that transaction. The enforcement of that doctrine would make the second mortgage the better security.

The point is made by the appellant's counsel that the judgment in the foreclosure action is a bar to the claim of the respondent that, as between him and the Ellicott Square Bank, he is only secondarily liable. The complaint was the usual one in a mortgage foreclosure action, and set out the bond which respondent gave, and to which the mortgage was collateral, and asked for judgment for deficiency against him. To this he had no defense. The allegations were strictly true. He was liable to the plaintiffs on his bond. The

judgment is an estoppel, in that it determined that he was liable on his bond to the plaintiffs; and the verity of that judgment, to its fullest extent, he is not seeking to impair. If the plaintiffs were content to hold Robbins only for the deficiency, instead of bringing in the Ellicott Square Bank and Harriette E. Jones, that was their privilege, and called for no interference by appellant or Robbins. If one holds an obligation against half a dozen persons who are severally liable for its payment, he is not obliged to sue them all. If among themselves some are sureties, and others principals, the fact that the person to whom they are all liable recovers against one or more does not settle their rights among themselves. Furthermore the action was proceeding exactly as the respondent desired. The sale under the judgment would establish the extent of the deficiency which he must pay, and concurrently would fix the liability of the Ellicott Square Bank to him. He desired the judgment enforced, and it is the intervention of the appellant to prevent this of which he is now complaining.

It is contended by the appellant that this matter should not be disposed of on a motion. The facts were undisputed. It is made in a pending action. So far as the record shows, there was no request to the county judge to order a reference to ascertain the facts. Of his own motion he might have ordered this to be done, but, as the facts were undisputed, he doubtless deemed it unnecessary. In any event, there is no necessity for this court to pursue that course. The orders should be affirmed, with $10 costs, and disbursements of this appeal.

Orders affirmed, with $10 costs, and the disbursements of this appeal.

WILLIAMS and HISCOCK, JJ., concur.

McLENNAN, J. (dissenting). Upon this appeal we are to determine whether or not a mortgagor in a first mortgage, who has conveyed his equity of redemption in the mortgaged property to a vendee who is financially responsible, by quitclaim deed, which contains no assumption of or agreement to pay the mortgage, is entitled to be subrogated to the rights of his mortgagee, who has commenced an action to foreclose the mortgage, and compel an assignment of it to him, as against the mortgagee in a second mortgage upon the same property, because of a secret agreement by the vendee to assume and pay the first mortgage, and because in a deed conveying the property, subsequently executed by the vendee, his grantee assumed its payment, and without any attempt having been made on the part of the mortgagor to enforce such agreement against his vendee, and without any allegation that such vendee is unable or unwilling to perform the same. Also, whether or not such mortgagor, who was made a party to and appeared in such foreclosure action, in which judgment was rendered adjudging him to be the principal debtor, and alone liable for any deficiency, may compel a junior mortgagee, who was also made a defendant in the action, and who has purchased the judgment rendered therein

for the protection of his junior security, to assign such judgment to him and relinquish all his rights thereunder, without offering to pay the junior security, solely upon the ground that such mortgagor was in fact, but contrary to the adjudication of the judgment, only surety for the payment of the mortgage debt, although nothing of the kind appeared in the judgment or roll, or was known to the purchaser of the judgment.

The facts which present these questions may be briefly stated: In 1897 one Howard owned a first mortgage upon a leasehold interest in the lands described in the complaint, and the Ellicott Square Bank of Buffalo, N. Y., owned a second mortgage upon the same interest. Howard commenced an action of foreclosure, in which judgment was granted. Pursuant thereto the property was sold on the 21st day of September, 1897, by a referee, and was purchased in the name of the defendant Walter G. Robbins. The purchase, however, was made by Robbins for and in behalf of the Ellicott Square Bank, and pursuant to the authority of its board of directors. The purchase price was $6,873.44, of which $1,873.44 was paid in cash by the Ellicott Square Bank, and the balance, $5,000, was paid by Robbins and his wife executing and delivering a purchase-money mortgage for that amount, which was duly recorded. Immediately thereafter, and also pursuant to a resolution adopted by its board of directors, the Ellicott Square Bank executed a writing whereby it agreed to indemnify, protect, and save Robbins harmless on account of the execution of the mortgage, and to assume and pay the same. March 21, 1898, Robbins conveyed the premises by quitclaim deed to the bank. The deed contained no assumption of or agreement to pay the mortgage, or any reference to it. Thereafter the bank paid $1,000 to apply upon the mortgage, leaving $4,000 of principal unpaid. It conclusively appears that the defendant Robbins, in purchasing the premises and in executing the mortgage in question, was acting solely for and in behalf of the Ellicott Square Bank, and as its agent. It is nowhere suggested that the bank is not responsible and abundantly able to perform its agreement with Robbins, and pay the mortgage made by him for it; nor does it appear that Robbins has ever requested the bank to perform and keep such agreement, or that it has in any manner refused so to do. About November 8, 1899, as appears by the records, the Ellicott Square Bank conveyed the premises in question to one Harriette E. Jones for $1,000 and the assumption by her of the mortgage executed by Robbins. November 9, 1899, Harriette E. Jones executed a second mortgage upon the same property to one Mary H. Ney to secure the payment of $2,000. On the same day the defendant the Third National Bank of Buffalo, N. Y., purchased such second mortgage, paying full value therefor, and caused it and the assignment to be duly recorded. It, however, appears by the moving papers that Harriette E. Jones took the title to the premises for and on behalf of one Allison K. Hume, with whom the bank negotiated the sale of the premises; that she was a stenographer in Hume's office, was a person of no financial responsibility, and was

nominated by Hume simply as the person who should take the title to the property for him, all to the knowledge and with the concurrence of the bank. It will thus be seen that when the Third National Bank purchased its second mortgage, so far as was disclosed by the records, Robbins was the principal debtor in the first mortgage. The assumption of the mortgage by Harriette E. Jones in her deed from the Ellicott Square Bank was not enforceable in favor of Robbins, so far as the records disclosed or the Third National Bank knew, because there was no assumption of the mortgage by the Ellicott Square Bank in the deed of conveyance to it. The agreement of assumption which it is now claimed was entered into between it and Robbins was not recorded or in any manner referred to in any of the conveyances. If we go outside of the title records, and to the moving papers, we find it was probably not expected by the Ellicott Square Bank that the assumption of the mortgage by Miss Jones, its grantee, was to have any binding force or effect, because, as we have seen, such conveyance was not made to Hume, the real purchaser, but to his stenographer, a person of no financial responsibility, simply upon his suggestion and for his convenience. In fact, the cashier of the Ellicott Square Bank states in his affidavit used upon the motion made by Robbins for the appointment of a receiver, which is a part of the record upon this appeal, that the bank sold the property to Hume, "but, when the time to exercise the option was about to expire, Mr. Hume notified deponent that he desired the property conveyed to Harriette E. Jones, who was a clerk in his office, and informed deponent that she would take the title to the same in his interest and behalf." In January, 1901, the amount secured by the first mortgage being unpaid and past due, this action was commenced to foreclose the same. Walter G. Robbins, the maker of the mortgage; Harriette E. Jones, who appeared of record as the owner of the fee; the Third National Bank, the owner of the second mortgage,—together with others who had minor interests in the premises, were made parties defendant. The Ellicott Square Bank, however, was not a party to the action. The complaint contained the allegations and demanded the judgment usual in foreclosure actions; asked that the defendant Robbins be adjudged the principal debtor, that he pay any deficiency, and that the plaintiff have judgment against him therefor. Robbins appeared in the action by the attorney of the Ellicott Square Bank, but made no answer; did not claim or assert in any manner that he was surety for the payment of the mortgage debt, and not the principal debtor, or that the assumption of the mortgage by his codefendant Harriette E. Jones inured to, or was intended for, his benefit. Thereafter such proceedings were had in the action that it was found there was due and unpaid on the mortgage the sum of $5,001.70, and judgment of foreclosure and sale was duly made and entered, directing the sale of the leasehold interest covered by the mortgage, and directing that the defendant Robbins pay any deficiency arising upon such sale. While the judgment was in full force and effect the defendant bank purchased

it, together with the mortgage which was merged in it, from the plaintiff in the foreclosure action, paying the face value therefor, together with the interest and costs, and obtained from the plaintiff an assignment of such judgment and of the mortgage which it foreclosed. Thereupon the defendant Robbins demanded of the defendant bank that it assign such judgment and mortgage to him, for the reason that in fact, notwithstanding the adjudication of the judgment itself to the contrary, he was only surety for the payment of the mortgage debt; that the Ellicott Square Bank, his principal, which was a stranger to the record and to the action, was the principal debtor; and that therefore he was entitled to be subrogated to the rights of the plaintiff, his mortgagee, as against the Third National Bank, a second mortgagee. The Third National Bank refused to comply with the demand of Robbins. This motion was then made by Robbins, and solely on his behalf, to compel the defendant bank to assign to him the judgment and mortgage which it had bought for its protection as a junior mortgagee, and without offering to pay such junior security. The order appealed from was made, directing such assignment. We think the order should be reversed.

1. There are no equities existing in favor of the defendant Robbins which entitle him to be subrogated to the rights of the mortgagee in the mortgage executed by him, as against the defendant bank, the owner of the junior mortgage. It must be conceded that except for the claim of Robbins that he is surety for the payment of the mortgage debt, and not the principal debtor in the first mortgage, the defendant bank would be entitled, as a matter of course, to an assignment of it, as an additional protection to the lien of its second mortgage. Sheldon, in his work on Subrogation (section 12), says:

"All persons having an interest in property subject to an incumbrance by which their interest may be prejudiced or lost have a right to disengage the property from such incumbrance by the payment of the debt or charge which creates it; and if such debt be one for which another party is ultimately liable, they will, upon their payment, be subrogated to the right of the creditor against the ultimate debtor, and against the property upon which the debt was a charge. A mortgagee can make no effectual resistance to a claim for subrogation by one who tenders to him his debt and costs, and who has a subordinate interest in the property, which would either be lost or seriously injured without the proposed substitution. So, a second mortgagee, who is in danger of losing his security by the foreclosure of the first mortgage, may redeem from the first mortgage, and may thereupon look to the mortgaged property for his reimbursement, even against intervening incumbrances. * * * The general rule is that a lien creditor, on paying the mortgage or other lien which is prior to his own, is subrogated by law to the rights of the creditor whose debt he has paid."

Frost v. Bank, 70 N. Y. 553, 26 Am. Rep. 627; Twombly v. Cassidy, 82 N. Y. 155.

In the case last cited the court said:

"The right of a junior incumbrancer to be subrogated to the place of a senior incumbrancer upon payment of the lien of the latter rests upon the principle that justice and equity require that he should be entitled to the rights and securities of the senior incumbrancer. He is bound to pay the demand of the senior incumbrancer before his own can be liquidated, and

under the circumstances it seems but equitable and just that he should be allowed to control the lien which stands in the way of obtaining the amount of his debt. The cases are numerous which uphold this equitable doctrine."

In Acer v. Hotchkiss, 97 N. Y. 395, Judge Finch said:

"The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort, and the resultant equity is steadily kept in view."

What, then, are the equities as between the parties to this appeal,—Robbins, the respondent, and the Third National Bank, the appellant? The Ellicott Square Bank is not a party to the action or to this motion. Therefore we are not concerned about its equities or rights in the premises, but are only to ascertain how the respondent and appellant stand in that regard, upon the facts disclosed by the papers upon this appeal. The two mortgages in question cover a leasehold interest in certain premises, and are not liens upon the fee. Under the first mortgage, in case of default the mortgagee is entitled to apply the rents of the property in extinguishment of the mortgage debt; and, the second mortgage being of the same character, nothing will be available to apply upon it until the first mortgage is paid. The entire leasehold interest, the lease having 15 years yet to run, is not worth to exceed $6,000. It is therefore apparent, if Robbins or some party other than the appellant shall be permitted to hold the first mortgage as a continuing lien against the leasehold interest, the value of the second mortgage will be wiped out and destroyed. The moving papers make it perfectly clear that it is essential for the protection of the second mortgage that the appellant be allowed to control the first mortgage. As to it the right of subrogation is one of substance,— is essential to prevent the destruction of its security. Robbins, upon the other hand, was indebted in the sum of $5,000. To secure the payment of such indebtedness he executed a mortgage upon property which, as appears by the record, he owned. He then sold his property to the Ellicott Square Bank. He is presumed to have received full value for it, and, if it was of sufficient value, that he received enough to protect him against his obligation, and in that case he would have no further interest in the matter. But if we assume that in fact Robbins was only the nominal owner of the property, that the Ellicott Square Bank was the real owner, that the mortgage executed by him for the purchase price was given for and on behalf of the bank, that it was its transaction, and that Robbins was merely surety for and the agent of the bank, he is not entitled, as against the appellant, to an assignment of the mortgage upon any principle of equity, because he is abundantly indemnified against loss. He has the agreement of the Ellicott Square Bank that it will pay the mortgage which he has made. So far as appears, all that Robbins will have to do is to demand a performance by the bank of its binding agreement. Robbins, however, is in the attitude of saying:

"I have an agreement with the Ellicott Square Bank which is enforceable, which fully indemnifies me against loss by reason of having executed a mortgage for it,—an agreement, perchance, which the bank is ready to perform upon demand; yet I insist that I shall be indemnified against my obli-

gation by an assignment to me of the mortgage which I made as agent for my indemnitor, although such assignment will destroy the value of a junior security."

He is in the attitude of saying:

"I was agent for the Ellicott Square Bank in purchasing the property, in giving the mortgage, in doing everything which I did in respect to the premises in question. I am secured against loss for any and all of such acts by reason of an agreement in writing executed and delivered to me by my principal, but I am not inclined to enforce that agreement, but demand security to which a junior incumbrancer would be entitled save for my claim."

If the position is tenable, Judge Finch was clearly wrong when he said, "The doctrine of subrogation is a device to promote justice." Robbins is not entitled to be subrogated for the benefit of the Ellicott Square Bank, or to protect it. Yet it is apparent that was the purpose of this motion, and the effect of the order appealed from. It is, indeed, a unique proposition, as applied to the law of subrogation, when considered from an equitable standpoint, that an agent who has executed a mortgage for his principal upon premises in fact owned by, and subsequently conveyed to, the principal, may compel an assignment of such mortgage to himself, as against a junior mortgagee, solely to avoid the necessity on the part of the agent of requiring his principal to reimburse him and assume the mortgage obligation, which the principal was bound to do under the law of principal and agent, but in this case, also, because of its independent agreement.

After a careful examination of all the facts, I am unable to discover a single equity existing in favor of the respondent which entitles him to an assignment of the mortgage in question, as against the appellant. The Ellicott Square Bank is not here in form, although it is evident that it is the real respondent; but if it was a party to this motion, and was in the attitude of demanding an assignment to it of the mortgage made by its agent, its position would be equally inequitable. According to the affidavits of its representatives, the agreement between it and Robbins, which was unrecorded, provided, in substance, that Robbins should act as its agent in the purchase of the premises and in giving the mortgage. It then took the title in its name by means of a deed made by the agent; being careful, however, not to assume in the deed the mortgage which was made for it and in its behalf, and which it was bound to pay as principal, and also because of its agreement so to do. It then sells the property, and at the suggestion of Hume, the real vendee, places the title in the name of a person who is wholly irresponsible financially; goes through the farce of having the stenographer of the real purchaser, to whom the deed was made, assume in such deed the payment of a $5,000 mortgage; and now it is insisted that somehow or other Robbins shall derive some benefit from that transaction. Every fact which has thus far been alluded to is taken from the moving papers, and not from the affidavits presented in opposition to the motion. The officers or representatives of the bank state, in almost so many words, that the premises were purchased by Robbins, the first mortgage made and exe-

cuted by him, the property taken in his name, for and in behalf of the Ellicott Square Bank; that it was its transaction, and not the transaction of Robbins at all; and, so regarding it, by a resolution of its board of directors it executed a solemn agreement by which it agreed to save Robbins harmless by reason of any and all his acts in the premises. By such agreement it agreed to pay the mortgage which he executed, and which is the subject of this controversy. By such affidavits it is also learned that when the clause assuming the mortgage in question was incorporated in the deed to Harriette E. Jones the bank knew that she was only a figurehead for Hume; knew that she was a stenographer in his office; that the sale was in fact to him; that the deed was taken in her name solely in his interest and behalf; yet such deed contains the assumption clause which it is urged is sufficient to deprive the appellant bank of its valuable right of subrogation in this case, notwithstanding there was no assumption by the bank in the deed to it from Robbins. We venture to suggest that no case, except this one, can be found in which it has been held that a mortgagor may prevent his mortgagee from selling his mortgage, although past due, and giving such title thereto as will enable the vendee to hold the same, at least as against such mortgagor, who has not paid the mortgage debt, and who boldly proclaims that he is amply protected against such obligation by the agreement of a third party for whom he was acting when it was incurred by him. Of course, a mortgagor can at any time pay a mortgage made by him, and compel its discharge by the owner, whoever he may be; but that he may compel his own obligation to be assigned to him by a purchaser of it for full value, in order that he may hold it as an investment, and thus deprive the purchaser of his investment, is not supported by any principle of equity, or, as we believe, by authority. When the mortgage in suit shall have been assigned to the respondent pursuant to the order appealed from, what may we suppose he will do with it? Seek by means of it to enforce the obligation which he has against his principal, the Ellicott Square Bank? He will be under no obligation so to do, and, so far as appears, he has no intention of so doing. Will he proceed to sell the mortgaged property under the decree of foreclosure, and thus procure the discharge of the mortgage? The order appealed from does not require such course on his part. It is plain that the respondent, after such assignment to him, will be at liberty, precisely the same as the purchaser of any other property, to hold the same indefinitely, or sell it to any other person who may desire to purchase, and thus during the lifetime of the lease covered by the mortgage substantially prevent the application of any of the rents to the payment of the second mortgage. It cannot be doubted that the appellant bank had the right to purchase and procure an assignment to it of the first mortgage, and thus protect its second mortgage; and, if so, upon the plainest principles of equity, it is entitled to retain such mortgage until both of such liens are satisfied. The conclusion is reached that upon the facts even as now disclosed, many of which were unknown to the appellant bank when it pur-

chased the second mortgage, there are no equities existing in favor of the respondent Robbins which entitle him to be subrogated to the rights of the mortgagee in the mortgage executed by him, as against the appellant bank.

2. When the appellant purchased the second mortgage, it had the right to assume that the title to the property upon which it was a lien was precisely as shown by the records in the county clerk's office, and that the rights of all the parties who appeared to be interested therein were such, and only such, as were disclosed by the records. This rule applies to a purchaser of land, and we can conceive of no good reason why it should not apply to the purchaser of an interest in land. From an examination of the records the bank learned that Walter G. Robbins was the principal debtor in the mortgage executed by him to Howard.. There was nothing to indicate that he was simply surety for the mortgage debt, and in the affidavit presented on behalf of the bank, which is not contradicted, it is positively stated that it had no knowledge of any agreement made by Robbins in respect to the mortgage by which he became surety. The record also disclosed that in the deed from the Ellicott Square Bank, Robbins' grantee, to Harriette E. Jones, she assumed the mortgage; but that agreement, whatever may have been its force and effect as between her and the bank, was void and not enforceable by Robbins, so far as the record disclosed, because of the fact that the mortgage was not assumed by the bank in the deed from Robbins to it, and there was nothing to indicate that any agreement to that effect existed. The rule upon this subject is stated by 1 Jones, Mortg. § 760, as follows:

"Under this rule it is still necessary, according to the New York and other cases, that the grantor should be personally liable upon the mortgage which his grantee has assumed the payment of, in order to render the grantee liable upon his covenant to the holder of the mortgage assumed."

The same rule, about which there can be no controversy, is stated in Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195. The headnote in that case is as follows:

"The grantee of mortgaged premises, whose conveyance recites that the land is conveyed subject to a mortgage, and that the grantee assumes and agrees to pay the same as part of the consideration, is not liable for a deficiency arising upon a foreclosure and sale, in case the grantor was not liable, legally or equitably, for the payment of the mortgage."

Cashman v. Henry, 75 N. Y. 103, 31 Am. Rep. 437; King v. Whitely, 10 Paige, 465; Wager v. Link, 134 N. Y. 122, 31 N. E. 213.

It is said, however, that the assumption clause in the deed to Harriette E. Jones was sufficient to have put the appellant bank upon inquiry, and imposed upon it the duty of ascertaining why the deed contained such clause, when there was no assumption of the mortgage in the deed from Robbins to the bank; that it was under the necessity of ascertaining whether or not there was an agreement which obligated the Ellicott Square Bank to pay the Robbins mortgage. We think it clear that there was nothing in the deed to Jones which made it incumbent upon the bank to make such investigation, but that it had the right to assume that by an examination

of the records it could learn the exact rights of the respective parties. If the appellant had inquired of the Ellicott Square Bank, what facts would it have learned? Certainly nothing to indicate that Robbins was entitled to be subrogated to the rights of his mortgagee as against a junior mortgagee. If the broad truth had been told in answer to such inquiry, the appellant would have learned that Robbins was not interested in the transaction at all; that what he did respecting the property and respecting the mortgage was done for the bank, and as its agent; that he was indemnified against loss on account of such transaction; that it (the Ellicott Square Bank) by its agreement had agreed to pay the mortgage and save him harmless as against any claim made against him on account thereof; and that it was able to keep its agreement. The appellant would also have learned that it was not intended that the assumption of the mortgage by Harriette E. Jones was to have any force or effect whatever; that she had no financial responsibility, had no interest in the property, but that it had been sold to Hume; and that Harriette E. Jones, in taking title to the mortgaged property, was simply a figurehead for him. If we assume that the information which the appellant bank might have obtained would have been of such a character that the Ellicott Square Bank might have insisted upon being subrogated to the rights of the mortgagee in the first mortgage, certainly nothing could have been learned which would entitle Robbins to such right, upon any principle of equity, or under the authority of any case to which attention has been called. The validity for any purpose of the assumption clause in the deed to Harriette E. Jones depended entirely upon the unrecorded agreement between Robbins and the bank, and the appellant was in no manner bound to ferret out that agreement and determine as to its effect before purchasing its mortgage. Can it be that it is the law of subrogation that a mortgagor may make some secret agreement with a third party by which his debt is assumed or guarantied, convey his equity of redemption, and then compel his mortgagee to assign the mortgage to him in case foreclosure is commenced, in order that he may hold it solely for the purpose of enforcing his agreement against such third party? We think no authority can be found which supports the proposition.

3. The defendant Robbins, who was a party defendant to this action, is estopped, as against his codefendant, the appellant bank, from asserting that his rights or obligations under the judgment are any other or different than as found and decreed by it. "The assignee of a judgment takes it subject to all the defenses of the defendant against the plaintiff, but not subject to the secret equities of third parties. The bona fide assignee for a valuable consideration of a judgment confessed to indemnify the plaintiff as surety on certain notes given by the defendant to a third party takes it free and discharged of the equities of the third party, to have the fruits of the judgment applied on account of the payment of the notes. There is no obligation on the part of such assignee to make inquiry as to the existence of such secret equities." Harris, Subr. § 514; Appeal of Mifflin Co. Nat. Bank, 98 Pa. 150. "A judgment taken by default is conclusive, by way of estoppel, in respect to all such matters and

facts as were well pleaded and properly raised and material to the case made by the declaration, or other pleadings, and such issues. cannot be relitigated in any subsequent action between the parties. or their privies. A judgment by default is as conclusive upon the judgment defendant as to any matter which ensued as any other form of judgment." 1 Black, Judgm. § 87. By the judgment in the case at bar, in which, as we have seen, the parties to this motion were defendants, it was adjudged that Robbins was the principal debtor, and that he was liable for any deficiency arising upon the sale of the mortgaged property. That was the claim of the plaintiff, as set forth in his complaint in the action; and, although Robbins appeared, he in no manner controverted the claim, but confessed it. After such judgment was rendered, the appellant purchased it, and paid full value therefor, upon the assumption that it was in fact what it purported to be. Under those circumstances, we think it cannot be held, either in equity or as matter of law, that the defendant Robbins is now at liberty to assert, as against the appellant, that he is not the principal debtor, but is surety only, and therefore is entitled to compel the assignment to him of the judgment which the appellant bank purchased for the protection of its junior security. If such is the law, it will not be safe for any purpose to buy a judgment, relying upon the record and the solemn adjudication of the court, because such adjudication or its effect may be changed upon motion, and a different determination reached as to the rights of one party to such judgment, to the prejudice of another party to the judgment, upon affidavits.

The conclusion is reached that the order directing the appellant to assign the judgment and mortgage in question to the respondent Robbins should be reversed. It follows that the order appointing a receiver of the rents and profits should also be reversed.

The orders appealed from should be reversed, with $10 costs and disbursements to the appellant.

ADAMS, P. J., concurs upon ground first stated herein.